David J. McGlothlin, Esq. (SBN: 165634)
david@kazlg.com
KAZEROUNI LAW GROUP, APC
301 E. Bethany Home Rd, Suite C-195
Phoenix, AZ 85012
Telephone: (602) 265-3332
Facsimile: (800) 520-5523

Attorneys for the Plaintiffs

# UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
[PORTLAND DIVISION]

| | |
|---|---|
| Debra Joann Coates Griffin, and Robert Hessee, individually and on behalf of all others similarly situated,<br><br>    *Plaintiffs*,<br><br>vs.<br><br><br>American-Amicable Life Ins. Co. of Texas,<br><br>    *Defendant*. | Case Number:<br><br>**[CLASS ACTION]**<br><br>**Complaint For Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(c) et seq.**<br><br>**Jury Trial Demanded** |

# INTRODUCTION

1. Plaintiffs, Debra Joann Coates Griffin ("Plaintiff Griffin") and Robert Hessee ("Plaintiff Hessee")(together referred to as "Plaintiffs"), indiviually and on behalf of all others similarly situated, brings this action against Defendant American-Amicable Life Ins. Co. of Texas, to secure redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

# NATURE OF THE ACTION

2. This is a putative class action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., (the "TCPA").

3. Defendant is a life insurance company. To promote its services, Defendant engages in unsolicited marketing, harming thousands of consumers in the process.

4. Through this action, Plaintiffs seek injunctive relief to halt Defendant's illegal conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals. Plaintiffs also seek statutory damages on behalf of herself and members of the class, and any other available legal or equitable remedies.

# JURISDICTION AND VENUE

5. Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiffs allege violations of a federal statute. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiffs allege a national class, which will result in at least one class member belonging to a different state than that of Defendant. Plaintiffs seek up to $1,500.00 (one-thousand-five-hundred dollars) in damages for each call in violation of the TCPA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 (five-million dollars) threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA"). Therefore, both the elements of diversity jurisdiction and CAFA jurisdiction are present.

6. Jurisdiction is also proper because there is a federal question due to the fact that Plaintiffs are alleging Defendant violated the TCPA, a federal statute.

7. Venue is proper in the United States District Court for the District of Oregon pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant is deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because Defendant provides and markets its services within this district thereby establishing sufficient contacts to subject it to personal jurisdiction. Further, Defendant's tortious conduct against Plaintiffs occurred within the State of Oregon and, on information and belief, Defendant has made the same phone calls complained of by Plaintiffs to other individuals within this judicial district, such that some of Defendant's acts in making such calls have occurred within this district, subjecting Defendant to jurisdiction in the State of Oregon.

## **PARTIES**

8. Plaintiffs(s) are natural persons who, at all times relevant to this action, were residents of Newport, Oregon and Baxter Springs, Kansas.

9. Defendant is a Texas corporation whose principal office is located at 425 Austin Ave, Waco, TX 76701. Defendant directs, markets, and provides its business activities throughout the United States.

## **THE TCPA**

10. The TCPA states that the regulations required by paragraph (2) may require the establishment and operation of a single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations. 47 U.S.C. § 227(c)(3).

11. The TCPA further states that it is prohibited to "any person from making transmitting a telephone solicitation to the telephone number of any subscriber included in such database." 47 U.S.C. § 227(c)(3)(F).

12. The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA. According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

13. In 2012, the FCC issued an order tightening the restrictions for automated telemarketing calls, requiring "prior express **written** consent" for such calls to wireless numbers. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis supplied).

14. To obtain express written consent for telemarketing calls, a defendant must establish that it secured the Plaintiffs' signature in a form that gives the Plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and having received this information, agrees unambiguously to receive such calls at a telephone number the [Plaintiff] designates." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

15. The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12). In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

16. "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Id*. (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

17. "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

18. The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call *or in the future. Id*.

19. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

20. If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the Plaintiff's prior express consent. *See In the Matter of Rules and Regulaions Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

21. As recently held by the United States Court of Appeals for the Ninth Circuit: "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A Plaintiff alleging a violation under the TCPA 'need not allege any *additional* harm beyond the one Congress has identified.'" *Van Patten v. Vertical*

*Fitness Grp.*, No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. May 4, 2016) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (emphasis original)).

22. Defendant is required to check the National Do Not Call Registry before attempting to call. 47 U.S.C. § 227(c)(3)(F).

# FACTS

**Plaintiff Robert Hessee**

23. Plaintiff Robert Hessee ("Plaintiff Hessee") has been on the National Do Not Call Registry since approximately June 14, 2008.

24. In May of 2022, Defendant called Plaintiff Robert Hessee's personal cellular telephone number ending in 0532 (the "0532 Number.")

25. On or around May 16, 2022, Defendant and/or Defendant's agent autodialed Plaintiff Robert Hessee's personal cellphone number ending in 0532. Defendant and/or Defendant's agent represented themselves as an entity called "Funeral Expense." When Plaintiff Hessee answered Defendant's call, he said 'hello' several times before hearing a click and then being connected to a live agent. The live agent indicated they were a representative of Funeral Expense named 'Sam'. In this first call, Plaintiff Hessee hung up after expressing disinterest in receiving services from Sam.

26. On May 17, 2022, Defendant again, autodialed Plaintiff Hessee at the 0532 Number on behalf of Defendant . The caller indicated their name was Sam and they were calling from Funeral Expense. The phone call was transferred to another agent but was then disconnected.

27. On May 19, 2022, Defendant and/or Defendant's agent again autodialed Plaintiff Hessee at the 0532 Number. Again, Sam from Funeral Expense on behalf of Defendant called Plaintiff Hessee to solicit the sale of Defendant's services. Sam then transferred the call to first Ronnie Evans, and then to Robert Radcliffe, American Amicable Plus Senior Choice Whole Life Insurance agents. The call then disconnected.

**Plaintiff Debra Joann Coates Griffin**

28. Plaintiff Debra Joann Coates Griffin has been on the National Do Not Call Registry since approximately August 24, 2021.

29. Between February and March of 2023 Defendant called Plaintiff Debra Joann Coates Griffin personal cellular telephone number ending in 3396 (the "3396 Number") at least three times.

30. On February 10, 2023, Defendant autodialed Plaintiff Debra Joann Coates Griffin from a caller ID ending in 0713 (the "0713 Caller ID"). Defendant represented themselves as an entity called "Senior Final Expenses' calling on behalf of American Amicable. Plaintiff Debra Joann Coates Griffin told Defendant representative that she would only conduct business through email and was not interested in entering a business relationship over the phone, since Defendant representatives would call her cellular telephone number and then disconnect shortly after. The representative then transferred Plaintiff Debra Joann Coates Griffin to another agent named Benjamin Angels with a direct line of (754) 202-9017.

31. Plaintiff Debra Joann Coates Griffin's counsel called the 9017 line and received the message "The text mail subscriber is not working."

32. On March 2, 2023, Defendant autodialed Plaintiff Debra Joann Coates Griffin from a caller ID ending in 0008 (the "0008 Called ID"). Defendant represented themselves as an entity called "Senior Final Expenses' calling on behalf of American Amicable. Plaintiff Debra Joann Coates Griffin told Defendant representative that she would only conduct business through email and was not interested in entering a business relationship over the phone, since Defendant representatives would call her cellular telephone number and then disconnect shortly after. The representative then transferred Plaintiff Debra Joann Coates Griffin to another agent named Sarah Angle with a callback number of (754) 202-9017.

33. On March 7, 2023, Defendant autodialed Plaintiff Debra Joann Coates Griffin from a caller ID ending in 4983 (the "4983 Called ID"). Defendant represented themselves as an entity called "Senior Final Expenses' calling on behalf of American Amicable. Plaintiff Debra Joann Coates Griffin told Defendant representative that she would only conduct business through email and was not interested in entering a business relationship over the phone, since Defendant representatives would call her cellular telephone number and then disconnect shortly after. The representative then transferred Plaintiff Debra Joann Coates Griffin to another agent named Mark Simmons with a direct line of (754) 202-9017.

34. Defendant's phone calls constitute telemarketing because they encouraged the future purchase or investment in property, goods, or services, i.e., selling Plaintiffs life insurance and annuity products.

35. Plaintiffs received the phone calls within this judicial district and, therefore, Defendant's violation of the TCPA occurred within this district. Upon information and belief, Defendant made other phone calls to individuals residing within this judicial district.

36. At no point in time did Plaintiffs provide Defendant with his express written consent to be contacted.

37. Plaintiffs Robert Hessee is the subscriber and sole user of the 0532 Number and is financially responsible for phone service to the 0532 Number.

38. Plaintiffs Debra Joann Coates Griffin is the subscriber and sole user of the 3396 Number and is financially responsible for phone service to the 3396 Number.

39. Defendant's phone calls originated from multiple telephone numbers which upon information and belief are owned and operated by Defendant and/or Defendant's agent.

40. Defendant's unsolicited phone calls caused Plaintiffs actual harm, including invasion of privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendant's phone calls also inconvenienced Plaintiffs and caused disruption to their daily life.

41. Defendant's unsolicited phone calls caused Plaintiffs actual harm. Specifically, Plaintiffs estimate that they spent numerous hours investigating the unwanted phone calls including how they obtained his number and who the Defendant was.

42. Furthermore, Defendant's phone calls and voicemails took up memory on Plaintiffs' cellular phone. The cumulative effect of unsolicited phone calls and voicemails like Defendant's poses a real risk of ultimately rendering the phone unusable for other purposes as a result of the phone's memory being taken up.

## CLASS ALLEGATIONS

### PROPOSED CLASS

43. Plaintiffs brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and all others similarly situated.

44. Plaintiffs brings this case on behalf of a Class defined as follows:

> **The Federal TCPA DNC Class: All persons within the United States who received two phone calls within a 12-month period from Defendant to said person's telephone, and such person had previously included their name on the National Do Not Call Registry at least 31 days prior to receiving Defendant first call, within the four years prior to the filing of this Complaint.**

Defendant and its employees or agents are excluded from the Class. Plaintiffs do not know the number of members in the Class but believes the Class members number in the several thousands, if not more.

### NUMEROSITY

45. Upon information and belief, Defendant has placed calls to cellular telephone numbers belonging to thousands of consumers throughout the United States on the noational do-not-call registry without their prior express consent. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

46. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

### COMMON QUESTIONS OF LAW AND FACT

47. There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

> **(1)** Whether Defendant made non-emergency calls to Plaintiffs' and Class members' cellular telephones while the numbers were on the national do-not-call registry;
>
> **(2)** Whether Defendant can meet its burden of showing that it obtained prior express written consent to make such calls;
>
> **(3)** Whether Defendant's conduct was knowing and willful;
>
> **(4)** Whether Defendant is liable for damages, and the amount of such damages; and
>
> **(5)** Whether Defendant should be enjoined from such conduct in the future.

48. The common questions in this case are capable of having common answers. If Plaintiffs' claim that Defendant routinely made phone calls to telephone numbers assigned to cellular telephone services is accurate, Plaintiffs and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

49. Plaintiffs' claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

50. Plaintiffs are representatives who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiffs are adequate representative and will fairly and adequately protect the interests of the Class.

### PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE

51. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

52. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

## COUNT I
### Violations of the TCPA, 47 U.S.C. § 227(c)(5)
**(On Behalf of Plaintiffs and the Class)**

53. Plaintiffs re-allege and incorporates paragraphs 1-53 as if fully set forth herein.

54. A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection

may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State

> **(A)** an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,
>
> **(B)** an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or
>
> **(C)** both such actions.

55. Defendant – or third parties directed by Defendant dialed numbers without to make non-emergency telephone calls to the telephones of Plaintiffs and the other members of the Class defined below.

56. These calls were made without regard to whether or not Plaintiffs or class members were on the National Do Not Call Registry. In fact, Defendant did not have prior express consent to call the cell phones of Plaintiffs and the other members of the putative Class when its calls were made.

57. Defendant has, therefore, violated § 227(c)(5) of the TCPA by making two or more non-emergency telephone calls to the phones of Plaintiffs and the other members of the putative Class without their prior express written consent.

58. Defendant knew that it did not have prior express consent to make these calls especially since Plaintiffs told Defendant they were not interested in what Defendant was offering. The violations were therefore willful or knowing.

59. As a result of Defendant's conduct and pursuant to § 227(c)(5) of the TCPA, Plaintiffs and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation and a maximum of $1,500 in statutory damages for willful violations. Plaintiffs and the class are also entitled to an injunction against future calls. *Id.*

**WHEREFORE**, Plaintiffs, on behalf of themselves and the other members of the Class, prays for the following relief:

a. A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227(c);

b. An injunction prohibiting Defendant from calling residential telephones without the prior express permission of the called party;

c. An order naming Plaintiffs as the class representatives;

d. An order naming Plaintiffs' counsel as class counsel;

e. An award of actual and statutory damages;

f. An award of treble damages for willful violations; and

d. Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

60. Plaintiffs and Class Members hereby demand a trial by jury.

Date: February 5, 2024

**KAZEROUNI LAW GROUP, APC**

By: /s/David McGlothlin
David McGlothlin
Attorney for the Plaintiffs