David J. McGlothlin, Esq. (SBN: 165634)
david@kazlg.com
KAZEROUNI LAW GROUP, APC
301 E. Bethany Home Rd, Suite C-195
Phoenix, AZ 85012
Telephone: (602) 265-3332
Facsimile: (800) 520-5523

Attorneys for the Plaintiffs

# UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
[PORTLAND DIVISION]

| | |
|---|---|
| Debra Joann Coates Griffin, and Robert Hessee, individually and on behalf of all others similarly situated,<br><br>    *Plaintiffs*,<br><br>vs.<br><br><br>American-Amicable Life Ins. Co. of Tex,<br><br>    *Defendant*. | Case Number: 6:24-cv-00243-MC<br><br>**[CLASS ACTION]**<br><br>**First Amended Complaint For Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(c) et seq.**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. Plaintiffs, Debra Joann Coates Griffin ("Plaintiff Griffin") and Robert Hessee ("Plaintiff Hessee") (together referred to as "Plaintiffs"), indiviually and on behalf of all others similarly situated, brings this action against Defendant American-Amicable Life Ins. Co. of Tex, to secure redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

## NATURE OF THE ACTION

2. This is a putative class action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., (the "TCPA").

3. Defendant is a life insurance company. To promote its services, Defendant engages in unsolicited marketing, harming thousands of consumers in the process.

4. Through this action, Plaintiffs seek injunctive relief to halt Defendant's illegal conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals. Plaintiffs also seek statutory damages on behalf of herself and members of the class, and any other available legal or equitable remedies.

## JURISDICTION AND VENUE

5. Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiffs allege violations of a federal statute. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiffs allege a national class, which will result in at least one class member belonging to a different state than that of Defendant. Plaintiffs seek up to $1,500.00 (one-thousand-five-hundred dollars) in damages for each call in violation of the TCPA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 (five-million dollars) threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA"). Therefore, both the elements of diversity jurisdiction and CAFA jurisdiction are present.

6. Jurisdiction is also proper because there is a federal question due to the fact that Plaintiffs are alleging Defendant violated the TCPA, a federal statute.

7. Venue is proper in the United States District Court for the District of Oregon pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant is deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because Defendant provides and markets its services within this district thereby establishing sufficient contacts to subject it to personal jurisdiction. Further, Defendant's tortious conduct against Plaintiffs occurred within the State of Oregon and, on information and belief, Defendant has made the same phone calls complained of by Plaintiffs to other individuals within this judicial district, such that some of Defendant's acts in making such calls have occurred within this district, subjecting Defendant to jurisdiction in the State of Oregon.

## PARTIES

8. Plaintiffs(s) are natural persons who, at all times relevant to this action, were residents of Newport, Oregon and Baxter Springs, Kansas.

9. Defendant is a Texas corporation whose principal office is located at 425 Austin Ave, Waco, TX 76701. Defendant directs, markets, and provides its business activities throughout the United States.

## THE TCPA

10. The TCPA states that the regulations required by paragraph (2) may require the establishment and operation of a single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations. 47 U.S.C. § 227(c)(3).

11. The TCPA further states that it is prohibited to "any person from making transmitting a telephone solicitation to the telephone number of any subscriber included in such database." 47 U.S.C. § 227(c)(3)(F).

12. The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA. According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

13. In 2012, the FCC issued an order tightening the restrictions for automated telemarketing calls, requiring "prior express ***written*** consent" for such calls to wireless numbers. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis supplied).

14. To obtain express written consent for telemarketing calls, a defendant must establish that it secured the Plaintiffs' signature in a form that gives the Plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and having received this information, agrees unambiguously to receive such calls at a telephone number the [Plaintiff] designates." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

15. The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12). In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

16. "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Id*. (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

17. "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

18. The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call *or in the future*. *Id*.

19. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

20. If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the Plaintiff's prior express consent. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

21. As recently held by the United States Court of Appeals for the Ninth Circuit: "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A Plaintiff alleging a violation under the TCPA 'need not allege any *additional* harm beyond the one Congress has identified.'" *Van Patten v. Vertical*

*Fitness Grp.*, No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. May 4, 2016) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (emphasis original)).

22. Defendant is required to check the National Do Not Call Registry before attempting to call. 47 U.S.C. § 227(c)(3)(F).

23. Additionally, the FCC—under 47 C.F.R. § 64.1601(e) and issued pursuant to its authority under 47 U.S.C. § 227(c)—requires telemarketers to provide caller-ID for their calls. *Adopted by In re* Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 18 F.C.C. Rcd. 14014 ¶ 183 (F.C.C. July 3, 2003), *published at* 68 Fed. Reg. 44,144, 44,179 (July 25, 2003).

24. When the FCC adopted section 64.1601(e), the FCC stressed that the caller ID requirements it was creating would help consumers to enforce their do-not-call rights. *Id*. at 44,156 ¶ 65.

25. The FCC also highlighted the role that caller ID plays in enabling consumers to avoid unwanted calls:

> "We revise the current TCPA rules and adopt new rules to provide consumers with several options for avoiding unwanted telephone solicitations. Specifically, we establish with the Federal Trade Commission (FTC) a national do-not-call registry for consumers who wish to avoid unwanted telemarketing calls. … The new rules will also require all companies conducting telemarketing to transmit caller identification (caller ID) information, when available, and prohibits them from blocking such information."

*Id*. at 44,144 ¶ 1. See also *Id*. at 44,179 ¶ 124 ("Caller ID allows consumers to screen out unwanted calls and to identify companies that they wish to ask not to call again. Knowing the identity of the caller is also helpful to consumers who feel frightened or threatened by hang-up and 'dead air' calls.")

26. In *Worsham v. Life Station, Inc.*, the Court of Special Appeals of Maryland succinctly explained that "Section 64.1601(e)(1) prohibits telemarketers from appearing on telephone subscribers' Caller IDs as 'unknown' by requiring them to transmit certain Caller ID

information, including the Calling Party Number ("CPN") or Automatic Numbering Information ("ANI"), and, if possible, the name of the telemarketer." *Worsham v. LifeStation, Inc.*, No. 661, 2021 Md. App. LEXIS 1014, at *45-46 (App. Nov. 17, 2021). "The regulation further provides that the information provided must be sufficient to 'permit any individual to make a do-not-call request during regular business hours.'" *Id*. at *46.

## FACTS

**Plaintiff Robert Hessee**

27.  Plaintiff Robert Hessee ("Plaintiff Hessee") registered his phone number on the National Do Not Call Registry on June 14, 2008. Plaintiff Hessee has since then received a confirmation email from the registry acknowledging this fact.

28.  In May of 2022, Defendant called Plaintiff Robert Hessee's personal cellular telephone number ending in 0532 (the "0532 Number.") As a retiree, Plaintiff does not use his cellular telephone for business purposes; instead, Plaintiff uses his cellular telephone to communicate with friends and family. In other words, Plaintiff uses his cellular telephone for residential purposes only.

29.  On or around May 16, 2022, Defendant and/or Defendant's agent autodialed Plaintiff Robert Hessee's personal cellphone number ending in 0532 from phone number 620-762-0532. Defendant and/or Defendant's agent represented themselves as an entity called "Funeral Expense." When Plaintiff Hessee answered Defendant's call, he said 'hello' several times before hearing a click and then being connected to a live agent. The live agent indicated they were a representative of Funeral Expense named "Sam". Sam attempted to sell Plaintiff Hessee life insurance in anticipation for final funeral expenses. Plaintiff Hessee hung up after expressing disinterest in receiving services from Sam.

30.  On May 17, 2022, Defendant again autodialed Plaintiff Hessee at the 0532 Number from phone number 620-762-0532. The caller once again indicated that their name was Sam and

they were calling from Funeral Expense. However, this time the caller explicitly informed Plaintiff Hessee that they were calling on behalf of American Amicable. Sam, again, attempted to sell Plaintiff Hessee life insurance in anticipation for final funeral expenses. In trying to sell the life insurance, the caller informed Plaintiff Hessee that Social Security would no longer meet the increasing funeral costs that his heirs would face. Plaintiff Hessee informed them that he is a retired federal employee (CSRS) and would not qualify for Social Security. Still, Plaintiff Hessee told them he was not interested. Nevertheless, the phone call was transferred to another agent but was then disconnected.

31. On May 19, 2022, Defendant and/or Defendant's agent again autodialed Plaintiff Hessee at the 0532 Number from phone number 620-762-0532. For the third time, Sam from Funeral Expense called Plaintiff Hessee. Sam explicitly said that they were calling on behalf of American Amicable to solicit the sale of life insurance. Sam made a similar pitch as in the May 17, 2022 (second) call. Sam then transferred the call to first Ronnie Evans, and then to Robert Radcliffe, both of whom, on information and belief are American Amicable Plus Senior Choice Whole Life Insurance agents. When Plaintiff Hessee spoke to Ronnie Evans, Mr. Evans solicited the sale of life insurance and specifically asked about his age, potential beneficiaries, and inquired about his interest in life insurance. When Plaintiff Hessee spoke to Robert Radcliffe, Mr. Radcliffe also solicited the sale of life insurance and asked similar questions. The call then disconnected.

32. Robert Radcliffe is a licensed insurance producer with the National Association of Insurance Commissioners. The company name associated with his license on the National Association of Insurance Commissioners website states that he is only an "Insurance Producer" for "American-Amicable Life Insurance Company of Texas." https://sbs.naic.org/solar-external-lookup/lookup/licensee/summary/19432331?jurisdiction=KS&entityType=IND&licenseType=PRO.

33. Through these repeated phone solicitations, Defendant, either directly or through its agents, attempted to sell Defendant's products and services. Thus, Defendant benefited from the potential sale of life insurance policies.

34. Additionally, Plaintiff is informed and believes that Defendant was aware that the insurance agents that were calling Plaintiff were making calls on Defendant's behalf especially since Robert Radcliff is listed as an Insurance Producer for Defendant on the National Association of Insurance Commissioners' website.

**Plaintiff Debra Joann Coates Griffin**

35. Plaintiff Debra Joann Coates Griffin ("Plaintiff Griffin") registered her phone number on the National Do Not Call Registry on August 24, 2021. Plaintiff Griffin has since received a confirmation email from the registry acknowledging this fact.

36. Plaintiff Griffin uses her cellular telephone for residential purposes such as calling friends and family.

37. Between February and March of 2023 Defendant called Plaintiff Griffin personal cellular telephone number ending in 3396 (the "3396 Number") at least three times.

38. On February 10, 2023, Defendant autodialed Plaintiff Griffin from a caller ID ending in 0713 (the "0713 Caller ID"). Defendant represented themselves as an entity called "Senior Final Expenses" and explicitly stated that they were calling on behalf of American Amicable. The caller attempted to solicit life insurance and asked Plaintiff Griffin about her age, health-related questions, and her zip code. Plaintiff Griffin told Defendant that she would only conduct business through email and was not interested in entering a business relationship over the phone, since Defendant's representatives would regularly call her cellular telephone number and then disconnect shortly after. The representative then transferred Plaintiff Griffin to another agent named Benjamin Angels with a direct line of (754) 202-9017. Before Plaintiff Griffin expressed

disinterest and hung up, Mr. Angels tried to sell her the same life insurance and explicitly stated they did so on behalf of American Amicable.

39. When the 9017 line was subsequently called back, a message was received that "The text mail subscriber is not working."

40. On March 2, 2023, Defendant autodialed Plaintiff Debra Griffin from a caller ID ending in 0008 (the "0008 Caller ID"). Defendant again represented themselves as an entity called "Senior Final Expenses" and explicitly stated that they were calling on behalf of American Amicable. The caller again tried to sell her life insurance. Plaintiff Griffin reiterated her disinterest in speaking over the phone. The representative then transferred Plaintiff Griffin to another agent named Sarah Angle with a callback number of (754) 202-9017. Ms. Angle also tried to sell Plaintiff Griffin life insurance, explicitly referencing that they did so on behalf of American Amicable. Plaintiff Griffin explained she did not want to speak over the phone.

41. On March 7, 2023, Defendant autodialed Plaintiff Griffin from a caller ID ending in 4983 (the "4983 Caller ID"). Defendant represented themselves as an entity called "Senior Final Expenses" and explicitly stated that they were calling on behalf of American Amicable. The caller tried to sell her life insurance. For the third time, Plaintiff Griffin told Defendant representative that she would only conduct business through email and was not interested in communicating over the phone. Nevertheless, the representative transferred Plaintiff Griffin to another agent named Mark Simmons with a direct line of (754) 202-9017. Mr. Simmons also tried to sell Plaintiff Griffin life insurance, explicitly referencing that they were doing so on behalf of American Amicable.

42. Through these repeated phone solicitations, Plaintiff Griffin came to believe that the callers attempted to sell Defendant's products and services. Thus, Defendant benefited from the potential sale of life insurance policies.

43. Defendant's phone calls constitute telemarketing because they encouraged the future purchase or investment in property, goods, or services, i.e., selling Plaintiff life insurance and annuity products.

44. Plaintiffs received the phone calls within this judicial district and, therefore, Defendant's violation of the TCPA occurred within this district. Upon information and belief, Defendant made other phone calls to individuals residing within this judicial district.

45. At no point in time did Plaintiffs provide Defendant with his express written consent to be contacted.

46. Plaintiffs Robert Hessee is the subscriber and sole user of the 0532 Number and is financially responsible for phone service to the 0532 Number.

47. Plaintiffs Debra Joann Coates Griffin is the subscriber and sole user of the 3396 Number and is financially responsible for phone service to the 3396 Number.

48. Defendant's phone calls originated from multiple telephone numbers which upon information and belief are owned and operated by Defendant and/or Defendant's agent.

49. Defendant's unsolicited phone calls caused Plaintiffs actual harm, including invasion of privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendant's phone calls also inconvenienced Plaintiffs and caused disruption to their daily life.

50. Defendant's unsolicited phone calls caused Plaintiffs actual harm. Specifically, Plaintiffs estimate that they spent numerous hours investigating the unwanted phone calls including how they obtained his number and who the Defendant was.

51. Most, if not all, of Defendant's unsolicited telemarketing phone calls—including those that when called back prompted that "the text mail subscriber is not working"—did not display the requisite caller ID information in violation of 47 C.F.R. § 1601(e), as promulgated by 47 U.S.C. § 227(c).

52. Furthermore, Defendant's phone calls and voicemails took up memory on Plaintiffs' cellular phone. The cumulative effect of unsolicited phone calls and voicemails like Defendant's poses a real risk of ultimately rendering the phone unusable for other purposes as a result of the phone's memory being taken up.

## CLASS ALLEGATIONS

### PROPOSED CLASS

53. Plaintiffs brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and all others similarly situated.

54. Plaintiffs brings this case on behalf of the Classes defined as follows:

> **The Federal TCPA DNC Class: All persons within the United States who received two telemarketing phone solicitation calls within a 12-month period from Defendant to said person's residential telephone, and such person had previously registered their own number on the National Do Not Call Registry at least 31 days prior to receiving Defendant first call, within the four years prior to the filing of the original Complaint.**
>
> **The Federal TCPA Caller ID Class: All persons within the United States who received a telemarketing phone solicitation from Defendant to said person's residential telephone where Defendant's Caller ID information, if any, prevented said person, should they have wanted, from calling Defendant back during regular business hours to make a do-not-call request.**

Defendant and its employees or agents are excluded from the Classes. Plaintiffs do not know the number of members in the Classes but believe the Class members number in the several thousands, if not more.

### NUMEROSITY

55. Upon information and belief, Defendant has placed calls to cellular telephone numbers belonging to thousands of consumers throughout the United States on the national do-not-

call registry without their prior express consent. Additionally, Defendant has placed calls to cellular numbers belonging to thousands of consumers throughout the United States without their prior express consent, which did not contain proper Caller ID information. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

56. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

### COMMON QUESTIONS OF LAW AND FACT

57. There are numerous questions of law and fact common to the Classes which predominate over any questions affecting only individual members of the Classes. Among the questions of law and fact common to the Classes are:

> **(1)** Whether Defendant made non-emergency calls to Plaintiffs' and Class members' cellular telephones while the numbers were on the national do-not-call registry;
>
> **(2)** Whether Defendant can meet its burden of showing that it obtained prior express written consent to make such calls;
>
> **(3)** Whether Defendant's conduct was knowing and willful;
>
> **(4)** Whether Defendant provided proper Caller ID pursuant to its telemarketing solicitations;
>
> **(5)** Whether Defendant is liable for damages, and the amount of such damages; and
>
> **(6)** Whether Defendant should be enjoined from such conduct in the future.

58. The common questions in this case are capable of having common answers. If Plaintiffs' claim that Defendant routinely made phone calls to telephone numbers assigned to

cellular telephone services is accurate, Plaintiffs and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

59. Plaintiffs' claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

60. Plaintiffs are representatives who will fully and adequately assert and protect the interests of the Classes and have retained competent counsel. Accordingly, Plaintiffs are adequate representative and will fairly and adequately protect the interests of the Classes.

### PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE

61. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Classes is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Classes are in the millions of dollars, the individual damages incurred by each member of the Classes resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Classes could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

62. The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Classes, although certain class members are not parties to such actions.

## COUNT I

## Violations of the TCPA, 47 U.S.C. § 227(c)(5)

**(On Behalf of Plaintiffs and the Class)**

63. Plaintiffs re-allege and incorporate paragraphs 1-62 as if fully set forth herein.

64. A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State

> **(A)** an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,
>
> **(B)** an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or
>
> **(C)** both such actions.

65. Defendant–or third parties directed by Defendant—placed multiple telemarketing calls to Plaintiff and members of the Class without their prior express consent.

66. These calls were made without regard to whether Plaintiffs or class members were on the National Do Not Call Registry. In fact, Defendant did not have prior express consent to call the cell phones of Plaintiffs and the other members of the putative Class when its calls were made.

67. Furthermore, Defendant lacked appropriate Caller ID on any of the unsolicited telemarketing phone calls in violation of 47 C.F.R. § 64.1601(e).

68. Defendant has, therefore, violated § 227(c)(5) of the TCPA by making two or more non-emergency telephone calls to the phones of Plaintiffs and the other members of the putative Class without their prior express written consent.

69. Defendant knew that it did not have prior express consent to make these calls especially since Plaintiffs told Defendant they were not interested in what Defendant was offering. The violations were therefore willful or knowing.

70. As a result of Defendant's conduct and pursuant to § 227(c)(5) of the TCPA, Plaintiffs and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation and a maximum of $1,500 in statutory damages for willful violations. Plaintiffs and the class are also entitled to an injunction against future calls. *Id.*

**WHEREFORE**, Plaintiffs, on behalf of themselves and the other members of the Class, prays for the following relief:

a. A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227(c);

b. An injunction prohibiting Defendant from calling residential telephones without the prior express permission of the called party;

c. An order naming Plaintiffs as the class representatives;

d. An order naming Plaintiffs' counsel as class counsel;

e. An award of actual and statutory damages;

f. An award of treble damages for willful violations; and

d. Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

71. Plaintiffs and Class Members hereby demand a trial by jury.

Date: May 23, 2024　　　　　　　　　　　　　　　**KAZEROUNI LAW GROUP, APC**

　　　　　　　　　　　　　　　　　　　　　　　　By: /s/David McGlothlin
　　　　　　　　　　　　　　　　　　　　　　　　David McGlothlin
　　　　　　　　　　　　　　　　　　　　　　　　Attorney for the Plaintiffs