Jeffrey G. Bradford, OSB No. 133080
Email: jeff.bradford@tonkon.com
TONKON TORP LLP
888 SW 5th Ave., Suite 1600
Portland, Oregon 97204
Telephone: (503) 802-5724

*Attorneys for Defendant*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## EUGENE DIVISION

| | |
|---|---|
| DEBRA JOAN COATES GRIFFIN and ROBERT HESSEE, individually and on behalf of all others similarly situated, | Case No. 6:24-cv-00243-MC |
| Plaintiffs, | **DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE PLAINTIFF'S FIRST AMENDED COMPLAINT** |
| v. | |
| AMERICAN-AMICABLE LIFE INS. CO. OF TEXAS, | **ORAL ARGUMENT REQUESTED** |
| Defendant. | |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................. 1

II.  RELEVANT ALLEGATIONS ................................................. 3

    A.  Plaintiff Hessee's Alleged Calls ........................................ 3

    B.  Plaintiff Griffin's Alleged Calls ........................................ 5

III.  APPLICABLE LEGAL STANDARDS ....................................... 6

    A.  Fed. R. Civ. P. 12(b)(6): Failure to State a Claim ................. 6

    B.  Fed R. Civ. P. 12(b)(1): Lack of Federal Subject Matter Jurisdiction .......... 7

IV.  ARGUMENT ..................................................................... 8

    A.  The FAC Should Be Dismissed in its Entirety Under Rule 12(b)(6) Because Plaintiffs Fail to Plausibly Allege a Theory of Liability Under the TCPA ................ 8

        1.  Plaintiffs Fail to Plausibly Allege Direct TCPA Liability ......... 8

            a)  The FAC's Allegations Concerning the Calls to Plaintiff Hessee Do Not Establish American-Amicable's Direct Liability .......... 11

            b)  The FAC's Allegations Concerning the Calls to Plaintiff Griffin Do Not Establish American-Amicable's Direct Liability .......... 14

        2.  Plaintiffs Fail to Plausibly Allege Vicarious TCPA Liability ......... 17

            a)  The FAC Fails to Allege American-Amicable's Actual Authority Over Any Third Party Caller .......... 18

            b)  The FAC Fails to Allege American-Amicable's Apparent Authority Over Any Third Party Caller .......... 19

            c)  The FAC Fails to Allege that American-Amicable Ratified the Conduct of Any Third Party Caller .......... 21

    B.  The FAC Should Also Be Dismissed Under Rule 12(b)(6) Because Plaintiffs Lack a Private Right of Action Under 47 C.F.R. § 1601(e) .......... 23

    C.  Plaintiffs' Requests for Injunctive Relief Should also Be Dismissed Under Rule 12(b)(1) Because Plaintiffs Lack Article III Standing to Seek Such Relief .......... 28

    D.  Any Dismissal Should Be With Prejudice .......... 28

V.  CONCLUSION ................................................................... 29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................................6

*Aspen v. Newsom*,
2010 WL 2721458 (N.D. Cal. July 7, 2010)...................................................................7

*Gillam v. Reliance First Cap., LLC*,
2023 WL 2163775 (E.D.N.Y. Feb. 22, 2023)..................................................................1

*Herrera v. CarMax Auto Superstores California, LLC*,
2014 WL 3398363 (C.D. Cal. July 2, 2014)...................................................................6

*Jones v. Nutiva, Inc.*,
2017 WL 3617104 (N.D. Cal. Aug. 23, 2017) ...............................................................8

*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001) .........................................................................................6

*Massey v. Biola Univ., Inc.*,
2020 WL 2476173 (C.D. Cal. Apr. 10, 2020) ................................................................7

*Miller v. Time Warner Cable Inc.*,
2016 WL 7471302 (C.D. Cal. Dec. 27, 2016) .............................................................7, 8

*Nelums v. Mandu Wellness, LLC*,
2023 WL 5607594 (D.N.M. Aug. 30, 2023) ................................................................2, 8

*nexTUNE, Inc. v. McKinney*,
2013 WL 2403243 (W.D. Wash. May 31, 2013)............................................................7

*Pascal v. Agentra, LLC*,
2019 WL 5212961 (N.D. Cal. Oct. 16, 2019).................................................................8

*Rogers v. Postmates Inc.*,
2020 WL 3869191 (N.D. Cal. July 9, 2020)...................................................................8

*Schaevitz v. Braman Hyundai, Inc.*,
437 F. Supp. 3d 1237 (S.D. Fla. 2019) ..........................................................................8

*Schleifer v. Lexus of Manhattan*,
2019 WL 4640055 (S.D.N.Y. Sept. 24, 2019)................................................................6

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Sheski v. Shopify (USA) Inc.*,
    2020 WL 2474421 (N.D. Cal. May 13, 2020) .......................................................2

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ...............................................................................7

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011) .............................................................................7

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998).................................................................................................8

*Washington Env't Council v. Bellon*,
    732 F.3d 1131 (9th Cir. 2013) .............................................................................7

*Wilson v. Hewlett-Packard Co.*,
    668 F.3d 1136 (9th Cir. 2012) .............................................................................7

**Statutes**

47 U.S.C. § 227(c)(2)..............................................................................................2

47 U.S.C. § 227(c)(5)....................................................................................1, 2, 3, 8

**Other Authorities**

47 C.F.R. § 64.1601(e)..................................................................................... *passim*

Fed. R. Civ. P. 12(b)(1)......................................................................................3, 7

Fed. R. Civ. P. 12(b)(6).................................................................................... *passim*

Fed. R. Evid. 201(b) and (c) ................................................................................6

U.S. Const. Art. III...........................................................................................3, 7, 8

## **LR 7-1 CERTIFICATION**

On June 4, 2024, Defendant's counsel conferred with Plaintiffs' counsel via phone. Counsel discussed the issues asserted in this motion and were unable to resolve disputed issues raised in this motion, including whether Plaintiffs' First Amended Complaint stated a plausible claim for relief, thus necessitating this motion.

## **MOTION TO DISMISS**

Defendant American-Amicable Life Insurance Co. of Texas (hereinafter, "American-Amicable") respectfully moves this Court to dismiss with prejudice the putative class action First Amended Complaint (*see* ECF No. 11, "FAC") filed in the above-captioned matter by Plaintiffs Debra Joan Coates Griffin ("Griffin") and Robert Hessee ("Hessee") (collectively, "Plaintiffs") pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1). In support of this Motion, American-Amicable respectfully submits and relies upon the incorporated Memorandum of Points and Authorities below.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    **INTRODUCTION**

Plaintiffs' FAC represents their second attempt to substantiate their claims that American-Amicable violated the Telephone Consumer Protection Act ("TCPA") by pleading sufficient non-conclusory factual allegations in accordance with federal pleading standards. Plaintiffs again failed to do so, and should not be afforded a third opportunity. While Plaintiffs have added some new allegations and even a new count, these amendments do not rectify the fatal defects in their prior pleading outlined in American-Amicable's initial motion to dismiss (*see* ECF No. 9). Thus, the FAC should be dismissed with prejudice for at least the following reasons:

**First**, the FAC should be dismissed under Rule 12(b)(6), as Plaintiffs fail to state a plausible claim under the TCPA or to plead sufficient facts supporting such a claim. All plaintiffs

must first plead facts supporting a theory of liability against the defendant to avoid dismissal of any TCPA claim. In this regard, liability under the TCPA comes in two forms: (1) direct liability (*i.e.*, liability for the person or entity that actually took steps to physically place/initiate the call), or (2) vicarious liability (*i.e.*, liability for the person or entity that controlled the "manner and means" by which a common law agent conducted a calling campaign on the principal's behalf). Here, the FAC does not adequately allege either theory because it lacks non-conclusory facts supporting a plausible inference that American-Amicable either: (i) itself, and not a third party, "physically" took any steps to place any calls to Plaintiffs, as required to plead direct TCPA liability; or (ii) that American-Amicable was in a common law agency relationship (the touchstone of which is "control" over) with any third party who did physically call them. Myriad courts in and beyond the Ninth Circuit have recognized that simply taking an "either/or" pleading approach and concluding that "the defendant or its agent called me" is insufficient to avoid dismissal of any TCPA claim on these bases alone under Rule 12(b)(6), even if the plaintiff has pled facts supporting other elements of their claims.[1] This Court should too.

**Second**, the FAC improperly alleges purported violations of two separate and distinct portions of the TCPA within a single count: (1) violations of the TCPA's National Do-Not-Call ("DNC") Registry provisions under 47 U.S.C. § 227(c)(5), and (2) violations of the TCPA's implementing regulations concerning mandated Caller ID disclosures, found in 47 C.F.R. § 64.1601(e). *See* ECF No. 11, ¶¶ 63–70. As to the latter, nearly every court, across multiple

---

[1] *See, e.g.*, *Sheski v. Shopify (USA) Inc.*, 2020 WL 2474421, at *2 (N.D. Cal. May 13, 2020) (discussing the differences between direct and vicarious TCPA liability and the standards for pleading same, and dismissing where plaintiff failed to adequately plead either theory); *Nelums v. Mandu Wellness, LLC*, 2023 WL 5607594, at *9 (D.N.M. Aug. 30, 2023) ("Because Plaintiff fails to satisfy the first elements of the TCPA and [an equivalent state statute]—that Defendants were directly or vicariously liable for the text messages—the Court does not reach Defendants' arguments regarding whether Plaintiff adequately plead the other elements" of the asserted claims.).

PAGE 2 –  DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE PLAINTIFF'S FIRST
            AMENDED COMPLAINT

jurisdictions, has held that Section 64.1601(e) of the regulations *does not provide for a private right of action*. Therefore, Plaintiffs' misguided attempt to bring such a claim should be rejected.

**Third,** the Court should also dismiss Plaintiffs' requests for injunctive relief pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction, due to their lack of standing under Article III of the U.S. Constitution. All plaintiffs must plead non-conclusory facts demonstrating they are at immediate risk of a possible future injury by the defendant to have Article III standing to seek injunctive relief in any federal case. Despite amending, Plaintiffs plead no such facts here.

## II.   RELEVANT ALLEGATIONS

The FAC, like its predecessor, is long on conclusions and speculation, and woefully short on actual plausible facts. In pertinent part, Plaintiffs allege as follows:

### A.   Plaintiff Hessee's Alleged Calls

As before, Hessee alleges, in conclusory fashion, that he received three calls between May 16 and May 19, 2022, made by or on behalf of American-Amicable in violation of the TCPA. *See* ECF No. 11, ¶¶ 29–32. As to the first purported call, Hessee alleges that "on or around May 16, 2022, Defendant and/or Defendant's agent autodialed [his] personal cellphone number ending in 0532 from phone number 620-762-0532." *Id.*, ¶ 29. The caller "represented themselves as an entity called 'Funeral Expense.'" *Id.* Hessee alleges that a Funeral Expense representative named "Sam" attempted to sell him "life insurance in anticipating for final funeral expenses." *Id.* The FAC does not allege that either American-Amicable or its products were discussed on the call, that Sam represented that he was an employee of American-Amicable or calling on its behalf, identify the number used to place the call, or indicate that the number placing the call was associated with American-Amicable. *See id.*

Next, Hessee concludes that "[o]n May 17, 2022, Defendant again autodialed Plaintiff Hessee at the 0532 Number from phone number 620-762-0532." *Id.*, ¶ 30. Like the first alleged

PAGE 3 – DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE PLAINTIFF'S FIRST
       AMENDED COMPLAINT

call, Hessee claims that this "caller indicated that their name was Sam and they were calling from Funeral Expense," but adds that "this time the caller explicitly informed Plaintiff Hessee that they were calling on behalf of American Amicable." *Id.* Sam allegedly tried to sell life insurance products to Hessee, but the FAC does not allege that any of the products pitched by Sam were offered by American-Amicable. *Id.* Hessee alleges that he was transferred to another agent before the call was disconnected. *Id.* The FAC offers no details about who this agent was. *Id.*

As to the third alleged call, Hessee again concludes that "Defendant and/or Defendant's agent" called him on May 19, 2022. *Id.*, ¶ 31. The FAC avers that "Sam from Funeral Expense" called him and "explicitly said that they were calling on behalf of American Amicable to solicit the sale of life insurance." *Id.* This pitch, like the May 17 call that Hessee supposedly received, does not reference American-Amicable's products or services specifically. *See id.*

After speaking with Sam from Funeral Expense, Hessee alleges that he was transferred to "Ronnie Evans, and then to Robert Radcliffe, both of whom, on information and belief are American Amicable Plus Senior Choice Whole Life Insurance agents." *Id.* However, the FAC does not explain how Hessee came to the conclusion that Ronnie Evans was an American-Amicable insurance agent. *See id.* The FAC also does not allege that Mr. Evans represented that he was a representative or employee of American-Amicable, or that he was attempting to sell American-Amicable's products or services. *See id.* Plaintiff's description of his discussion with Robert Radcliffe is similarly lacking in detail. *See id.* The FAC does not allege that Mr. Radcliffe indicated that he was a representative or employee of American-Amicable, nor does the FAC allege that he attempted to sell American-Amicable's products or services. *See id.* The FAC contains the new allegation that Mr. Radcliffe is a licensed insurance producer with the National Association of Insurance Commissioners for American-Amicable. *Id.*, ¶ 32.

### B.      Plaintiff Griffin's Alleged Calls

Plaintiff Griffin alleges that she received three calls by or on behalf of American-Amicable in February and March of 2023. *See* ECF No. 11, ¶ 37. The first call Griffin allegedly received occurred on February 10, 2023, from a Caller ID ending in -0713. *Id.*, ¶ 38. The FAC, like the original Complaint, suggests that the caller represented themselves as "Senior Final Expenses" calling on behalf of American-Amicable. *Id.* After speaking with the representative from "Senior Final Expenses" about vaguely described life insurance solicitations, Plaintiff Griffin was transferred to an individual named "Benjamin Angels with a direct line of (754) 202-9017." *Id.* Unlike the Complaint, the FAC alleges that Mr. Angels "tried to sell her the same life insurance and explicitly stated they did so on behalf of American Amicable." *See id.* Yet, the FAC alleges that placing a return call to the -9017 number does not connect to American-Amicable, but a message stating that "[t]he text mail subscriber is not working." *Id.*, ¶ 39.

Griffin further alleges that American-Amicable called her on March 2, 2023, from a Caller ID ending in -0008. *See id.*, ¶ 40. But Griffin's description of the call does not provide who actually placed the call. *Id.* The FAC alleges that "Defendant autodialed Plaintiff Debra Griffin from a caller ID ending in 0008 [. . .]. Defendant again represented themselves as an entity called 'Senior Final Expenses' and explicitly stated that they were calling on behalf of American Amicable." *Id.* After speaking with the initial caller, Griffin again invited an email communication from the caller before being transferred to "Sarah Angle with a callback number of (754) 202-9017." *Id.* Ms. Angle purportedly tried to sell Griffin life insurance, and "explicitly referenc[ed] that [she] did so on behalf of American Amicable." *See id.* However, the FAC does not allege that American-Amicable owns or operates the -9017 number or that "Sarah Angle" held herself out to be an American-Amicable employee. *See id.*

Lastly, Griffin alleges that American-Amicable called her on March 7, 2023, from a

number ending in 4983. *Id.,* ¶ 41. The description of this call is largely the same as the March 2, 2023 call discussed above, except that the individual to whom Griffin was transferred was named "Mark Simmons with a direct line of (754) 202-9017." *See id.* However, the FAC does not associate the -9017 call back number, or any of the individuals with whom Griffin purportedly spoke after being transferred to that number, with American-Amicable. *Id.,* ¶¶ 38–41. In fact, neither Plaintiff alleges any facts connecting any of the numbers allegedly used to place the subject calls with American-Amicable, but instead still allege (or rather still merely conclude) that "Defendant's phone calls originated from multiple telephone numbers which **upon information and belief are owned and operated by Defendant and/or Defendant's agent**." *Id.*, ¶ 48 (emphasis added). In fact, the only number provided in full is the one that Griffin was allegedly transferred to with the (754) area code. *Id.*, ¶¶ 38-41. Notably, however, though Plaintiffs allege American-Amicable is a Texas company headquartered in Texas (*see id.,* ¶ 9), (754) is the area code for ***Fort Lauderdale, Florida***. *See* https://www.allareacodes.com/754 (last visited June 5, 2024).[2]

### III.    APPLICABLE LEGAL STANDARDS

#### A.    Fed. R. Civ. P. 12(b)(6): Failure to State a Claim

When reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court takes "all factual allegations set forth in the complaint . . . as true and construed in the light most favorable to plaintiffs." *Lee,* 250 F.3d at 679. However, only well-pleaded facts are given a presumption of truth. *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009). Conclusory allegations that "simply recite the

---

[2] American-Amicable respectfully requests that this Court take judicial notice of this information when ruling on the present Motion under Fed. R. Evid. 201(b) and (c). *See, e.g., Lee v. City of Los Angeles,* 250 F.3d 668, 689 (9th Cir. 2001) ("A court may take judicial notice of 'matters of public record' without converting a motion to dismiss into a motion for summary judgment.") (citation omitted); *Herrera v. CarMax Auto Superstores California, LLC,* 2014 WL 3398363, at *2 (C.D. Cal. July 2, 2014) (For Rule 12(b)(6) purposes, "[i]t is not uncommon for courts to take judicial notice of factual information found on the World Wide Web."); *Schleifer v. Lexus of Manhattan,* 2019 WL 4640055, at *4 (S.D.N.Y. Sept. 24, 2019) (taking judicial notice of area codes).

elements of a cause of action" without supplying underlying facts to support those elements are not "entitled to the presumption of truth[.]" *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). In other words, the Court need <u>not</u> accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 n.4 (9th Cir. 2012); *see also* *nexTUNE, Inc. v. McKinney*, 2013 WL 2403243, at *4 (W.D. Wash. May 31, 2013) ("[S]peculation unsupported by any factual allegation is insufficient to survive a motion to dismiss under 12(b)(6).") (citing *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)). Rather, "[t]o survive a Rule 12(b)(6) dismissal, a complaint must allege enough specific facts to provide both 'fair notice' of the particular claim being asserted and 'the grounds upon which it rests.'" *Massey v. Biola Univ., Inc.*, 2020 WL 2476173, at *5 (C.D. Cal. Apr. 10, 2020), *report and rec. adopted,* 2020 WL 2468765 (May 13, 2020)). Further, the Court is not required to "accept as true allegations that contradict matters properly subject to judicial notice . . ." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

### B.    Fed R. Civ. P. 12(b)(1): Lack of Federal Subject Matter Jurisdiction

Dismissal of a complaint is also required under Rule 12(b)(1) for lack of federal subject matter jurisdiction where a plaintiff fails to establish his or her Article III standing. *See*, *e.g.*, *Washington Env't Council v. Bellon*, 732 F.3d 1131, 1147 (9th Cir. 2013). "The absence of any one element [out of the three required] deprives a plaintiff of Article III standing and requires dismissal." *Aspen v. Newsom*, 2010 WL 2721458, at *1 (N.D. Cal. July 7, 2010) (citing *Whitmore v. Federal Election Comm'n,* 68 F.3d 1212, 1215 (9th Cir. 1995)). Further, where a plaintiff lacks Article III standing to seek a particular form of relief, like injunctive relief, the Court lacks federal subject matter jurisdiction to award it and may dismiss that claim. *See*, *e.g.*, *Miller v. Time Warner Cable Inc.*, 2016 WL 7471302, at *2–4 (C.D. Cal. Dec. 27, 2016). Plaintiffs must plead plausible facts suggesting a possible future injury to themselves to establish Article III standing to seek

PAGE 7 – DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE PLAINTIFF'S FIRST
        AMENDED COMPLAINT

injunctive relief. *See*, *e.g.*, *Jones v. Nutiva, Inc.*, 2017 WL 3617104, at *4 (N.D. Cal. Aug. 23, 2017)*; *see also* *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 108-09 (1998) (a "generalized interest in deterrence" is insufficient to demonstrate Article III standing for injunctive relief). Failure to allege such facts warrants dismissal of the request. *See* *Miller*, 2016 WL 7471302, at *2–4 (dismissing request for injunctive relief in TCPA case on this basis); *Schaevitz v. Braman Hyundai, Inc.*, 437 F. Supp. 3d 1237, 1251-52 (S.D. Fla. 2019) (same).

## IV.    ARGUMENT

### A.    The FAC Should Be Dismissed in its Entirety Under Rule 12(b)(6) Because Plaintiffs Fail to Plausibly Allege a Theory of Liability Under the TCPA

As a threshold matter, courts in the Ninth Circuit, and throughout the country, have held that there are "two potential theories of liability under the TCPA: (1) direct liability; and (2) vicarious liability." *Rogers v. Postmates Inc.*, 2020 WL 3869191, at *3 (N.D. Cal. July 9, 2020) (citing *Thomas v. Taco Bell Corp.*, 582 F.App'x 678, 679 (9th Cir. 2014)). In other words, "[f]or a person to 'make' [or 'initiate'] a call under the TCPA, the person must either (1) directly make the call, or (2) have an agency relationship with the person who made the call." *Pascal v. Agentra, LLC*, 2019 WL 5212961, at *2 (N.D. Cal. Oct. 16, 2019) (quoting *Abante Rooter & Plumbing v. Farmers Grp., Inc.*, 2018 WL 288055, at *4 (N.D. Cal. Jan. 4, 2018)). Failure to plausibly allege either theory warrants dismissal of any TCPA claim in its entirety, regardless of whether the plaintiff has also plead facts supporting other essential elements of that claim. *See*, *e.g.*, *Nelums*, 2023 WL 5607594, at *9. Plaintiffs' FAC fails to adequately allege either theory.

#### 1.    Plaintiffs Fail to Plausibly Allege Direct TCPA Liability

A direct liability theory under the TCPA can only be advanced against the person or entity that "initiated" the call, which courts and the Federal Communications Commission ("FCC") have interpreted to be the act of ***physically*** placing the complained of calls. *Sheski*, 2020 WL 2474421,

at *2 (citing *In re Joint Petition filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6583 ¶ 26 (2013) ("Dish Network")). *Accord Hamilton v. El-Moussa*, 2020 WL 8993127, at *2 (C.D. Cal. Apr. 30, 2020) (dismissing under Rule 12(b)(6)). This rule applies equally to claims under the TCPA's DNC provisions. *See*, *e.g.*, *Donaca v. Dish Network, LLC*, 303 F.R.D. 390, 394-96 (D. Colo. 2014). In other words, a call physically placed by a third party—even if allegedly on behalf of a defendant or results in a defendant's name being mentioned—is insufficient to establish direct TCPA liability as a matter of law. That is because "merely offering a good or service for sale does not mean that a retailer [physically] initiates the marketing calls for that product" for direct TCPA liability purposes. *Wick v. Twilio Inc.*, 2017 WL 2964855, at *3 (W.D. Wash. July 12, 2017). Instead, there must be a "direct connection between a person or entity and the making of a call" for direct liability to attach under the TCPA. *In re Rules and Regs. Implementing the TCPA*, 30 FCC Rcd. 7961, 7980 (Jul. 10, 2015).

It is also well-settled that allegations of direct liability must be supported by more than just barebones legal conclusions and speculation that the defendant "made" or "initiated" the phone calls at issue. *See Frank v. Cannabis & Glass, LLC*, 2019 WL 4855378, at *2 (E.D. Wash. Oct. 1, 2019). *See also Brownlee v. Allstate Ins. Co.*, 2021 WL 4306160, at *1 (N.D. Ill. Sept. 22, 2021) (dismissing under Rule 12(b)(6) and holding that, to avoid dismissal on this basis, all TCPA plaintiffs must allege facts to "allow the Court to reasonably infer that defendant is [directly] liable for *each call*" at issue) (emphasis added); *Cunningham v. Daybreak Solar Power, LLC*, 2023 WL 3985245, at *2 (N.D. Tex. June 13, 2023) ("At the pleading stage, the plaintiff must allege facts to support claim that the defendant is the party that [physically] initiated the phone calls."); *Metzler v. Pure Energy USA LLC*, 2023 WL 1779631, at *6 (S.D.N.Y. Feb. 6, 2023) (dismissing, holding all TCPA plaintiffs must "allege facts from which the Court can plausibly infer that [d]efendant has direct liability, even if it

is also plausible that a third party made the call"); *Woodard v. Health Ins. All.*, 2024 WL 942629, at *3 (N.D. Ill. Mar. 5, 2024) (dismissing, holding that all "TCPA actions must allege some facts which are distinguishable from the statutory language of the TCPA itself to state a claim and survive dismissal.").[3] Thus, taking an "either/or" pleading approach and concluding the "defendant or its agent called" the plaintiff does not suffice to plead direct TCPA liability. *See*, *e.g.*, *Bank v. Philips Elecs. N. Am. Corp.*, 2015 WL 1650926, at *2 (E.D.N.Y. Apr. 14, 2015) (plaintiff's allegations that the at-issue calls were "made by, or on behalf of, or with the authorization of, an authorized dealer of [defendant]" were "too conclusory to state a plausible claim" for direct TCPA liability).

To these ends, federal courts regularly dismiss direct TCPA liability claims at the pleadings stage under Rule 12(b)(6) where, as here, the pleadings fail to include sufficient factual allegations indicating that the defendant actually "ma[d]e" the calls at issue by "tak[ing] the steps necessary to physically place*"* a call. *Sheski*, 2020 WL 2474421, at *2–4 (quoting *In re Dish Network, LLC*, 28 FCC Rcd. at 6583 ¶ 26). *See also Rogers v. Assurance IQ, LLC*, 2023 WL 2646468, at *5 (W.D. Wash. Mar. 27, 2023) (granting motion to dismiss on direct liability grounds since "[a] TCPA plaintiff must allege facts to support their belief that the defendant placed the calls at issue, such as 'how the caller identified itself, the substance of the calls,' or other details revealing that the defendant actually took steps to place the calls."); *Barnes v. SunPower Corp.*, 2023 WL 2592371, at *3 (N.D. Cal. Mar. 16, 2023) (dismissing on this basis where complaint failed to plausibly allege

---

[3] While various provisions of the TCPA use the terms "make" or "initiate" interchangeably, courts evaluating and dismissing conclusory direct TCPA liability claims like Plaintiff's (including those above and many others) have uniformly held that "make" or "initiate" in this context means to "physically" make the calls at issue. *See also Meeks v. Buffalo Wild Wings, Inc.*, 2018 WL 1524067, at *3–5 (N.D. Cal. Mar. 28, 2018); *Hicks v. Alarm.com*, 2020 WL 9261758, at *5 (E.D. Va. Aug. 6, 2020); *Scruggs v. CHW Grp., Inc.*, 2020 WL 9348208, at *8 (E.D. Va. Nov. 12, 2020); *Aaronson v. CHW Grp., Inc.*, 2019 WL 8953349, at *2 (E.D. Va. Apr. 15, 2019). *See also Dish Network, LLC*, 28 FCC Rcd. at 6583 (ruling that merely having some role "in the causal chain that results in the making of a telephone call" or sending a text message is insufficient for direct TCPA liability).

PAGE 10 – DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE PLAINTIFF'S FIRST
        AMENDED COMPLAINT

defendant was responsible for making the initial call to plaintiff). Here, Plaintiffs' allegations that American-Amicable physically initiated the alleged calls do not rise past the speculative level.

> a)    *The FAC's Allegations Concerning the Calls to Plaintiff Hessee Do Not Establish American-Amicable's Direct Liability*

Here, Plaintiff Hessee alleges that, on May 16, 2022, "Defendant ***and/or*** Defendant's agent autodialed [his] personal cellphone number ending in 0532 from phone number 620-762-0532." ECF No. 11, ¶¶ 29 (emphasis added). The FAC further alleges that this first call was placed by an individual named Sam, who "indicated that they were a representative of Funeral Expense[.]" *Id.* In other words, he concedes that American-Amicable did not place the call. The FAC further alleges that on May 17 Defendant, not "Defendant and/or Defendant's agent," "autodialed Plaintiff Hessee at the 0532 Number from phone number 620-762-0532." *Id.*, ¶ 30. But Hessee again spoke to Sam from Funeral Expenses, who again confirmed "they were calling from Funeral Expense." *Id.* Sam purportedly then told Plaintiff Hessee that the call was being placed on behalf of American-Amicable. *Id.* Hessee reverts back to the either/or approach of who called him in his description of the third and final call he received on May 19, alleging that "Defendant and/or Defendant's agent" called him from the number 650-762-0532. *Id.*, ¶ 31. He again spoke with Sam, who again confirmed that he was "calling from Funeral Expense [. . .] on behalf of American Amicable to solicit the sale of life insurance." *Id.* Hessee was then allegedly ***transferred*** to individuals he alleges are American-Amicable life insurance agents. *Id.*, ¶¶ 31, 32. At no point does he allege that the number that called him is associated with American-Amicable, or that American-Amicable, its services, or products were discussed on these calls. *Id.*, ¶¶ 29–31. Indeed, the FAC confirms that Plaintiff Hessee does not know who actually physically placed the alleged calls by speculating elsewhere that "[t]hrough these repeated phone solicitations, Defendant, either directly or through its agents, attempted to sell Defendant's products and services." *Id.*, ¶ 33.

Courts in the Ninth Circuit and across the country have dismissed similar TCPA complaints on direct liability grounds containing precisely these types of conclusory allegations on the basis that they fail to contain sufficient factual content connecting a defendant to the physical initiation of calls. *See*, *e.g.*, *Abante Rooter,* 2018 WL 288055, at *4 (dismissing claim on direct liability grounds where the complaint only contained the conclusory allegations that callers represented they "were calling 'on behalf of Defendant'" and "allegations that baldly assert the caller was a representative of defendant."); *Assurance IQ, LLC*, 2023 WL 2646468, at *5 (dismissing TCPA claim on direct liability claim where plaintiff merely alleged that a defendant physically dialed the call at issue, since "[a] TCPA plaintiff must allege facts to support their belief that the defendant placed the calls at issue, such as 'how the caller identified itself, the substance of the calls,' or other details revealing that the defendant actually took steps to place the calls."); *Frank,* 2019 WL 4855378, at *2 (dismissing because "[m]erely alleging that [a defendant] 'made' or 'initiated' [a] call is not sufficient to allege a [direct] TCPA [liability] claim"); *Aaronson,* 2019 WL 8953349, at *2 (dismissing claim on direct liability grounds after finding complaint was "devoid of facts such as how the caller identified itself, the substance of the calls, or any other details from the telephone calls that would tend to identify defendant as the party that actually, physically took the steps to place the calls to plaintiff's phone."); *Smith v. Direct Building Supplies, LLC*, 2021 WL 4623275, at *3 (E.D. Pa. Oct. 7, 2021) (dismissing where plaintiff "provide[d] no details specifying how [plaintiff] knew that [defendant] in fact placed these calls"); *Smith v. Vision Solar LLC*, 2020 WL 5632653, at *3 (E.D. Pa. Sept. 21, 2020) (allegation that defendant placed calls to plaintiff "from multiple telephone numbers confirmed to belong to Defendant" did not allege sufficient facts to support this conclusion); *Cunningham v. Trilegiant Corp.*, 2016 WL 10650606, at *3 (M.D. Tenn. Aug. 26, 2016) (granting motion to dismiss on theory of direct liability where allegation that third-

PAGE 12 – DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE PLAINTIFF'S FIRST
AMENDED COMPLAINT

party placed calls "on behalf of [defendant]" did "not plausibly suggest that [defendant] committed the physical act of initiating unlawful phone calls.").

Moreover, the FCC, the agency charged with promulgating and administering the TCPA's regulations, has confirmed that calls allegedly made on "behalf of" a defendant do not establish direct liability. *See*, *e.g.*, *Mohon v. Agentra LLC*, 400 F. Supp. 3d 1189, 1226 (D.N.M. 2019) ("The FCC recognizes vicarious liability extending to the individuals "on behalf of" whom the telemarketing makes a call, but limits the liability pursuant to general federal common-law agency standards.") (citing *Dish Network*, 28 FCC Rcd. 6574, 6585-86 ¶¶ 30-31); *Rogers v. Interstate Nat'l Dealer Servs. Inc.*, 2020 WL 4582689, at *3 (N.D. Ohio Aug. 10, 2020) (also dismissing direct liability claim, holding that "Plaintiff argues that because he received a call 'on behalf of' [defendant], [defendant] is directly liable under the TCPA. Plaintiff is mistaken. Indeed, the FCC, when discussing calls made 'on behalf of' a seller, has viewed such calls in the context of vicarious liability.") (citing same provision of *Dish Network* as *Mohon*); *see also* *Bennett v. Celtic Ins. Co.*, 2022 WL 865837, at *3 (N.D. Ill. Mar. 23, 2022) (dismissing, holding that "a defendant 'generally does not initiate calls [within the meaning of the TCPA] placed by third-party telemarketers,' even if the third party had acted on its behalf."). The Court should reach the same conclusion here.

Even assuming *arguendo* that "Ronnie Evans" and "Robert Radcliffe" were employees of American-Amicable, which is not conceded, direct liability does not attach simply because a call was ***transferred*** to a defendant. Transferring a call to the defendant is not the same as the defendant itself physically placing a call directly to the plaintiff, and allegations to this effect are insufficient to plead direct TCPA liability. *See, e.g.*, *Barnes*, 2023 WL 2592371, at *3 (dismissing where the plaintiff's allegations regarding transfer by third party were too "conclusory and insufficient to establish that [d]efendant directly made the call" at issue); *Bank v. Alleviate Tax, LLC*, 2024 WL

1332635, at *4 (E.D.N.Y. Mar. 28, 2024) ("[D]espite Plaintiff alleging that he was directly transferred to an Alleviate employee [] his pleadings still shed no light on who initiated the [initial] offending call, which is necessary to allege direct liability under the TCPA.") (citation omitted); *Cunningham v. Daybreak Solar Power*, 2023 WL 3985245, at *2 (dismissing similar case, where the plaintiff eventually spoke to defendant's employee after an initial prerecorded message identifying a third party, holding that such "facts failed to show whether [d]efendant physically initiated the phone call or whether the call was instead placed by a third-party telemarketer") (internal punctuation omitted); *Landy v. Nat. Power Sources, LLC*, 2021 WL 3634162, at *3 (D.N.J. Aug. 17, 2021) (finding plaintiff could not pursue direct liability theory where plaintiff merely alleged that he eventually transferred to defendant); *Childress v. Liberty Mut. Ins. Co.*, 2018 WL 4684209, at *4 (D.N.M. Sept. 28, 2018) ("Mere conclusory allegations that the 'robot machine' belonged to Defendant, coupled with allegations that the initial call was transferred to Defendant's in-house telemarketer, are insufficient to establish that Defendant had the right to control the initiation of the telephone call to Plaintiff."). This Court should rule similarly.

      b)    *The FAC's Allegations Concerning the Calls to Plaintiff Griffin Do Not Establish American-Amicable's Direct Liability*

Plaintiff Griffin's allegations do not fare better, as the FAC merely alleges in conclusory fashion that American-Amicable, not American-Amicable's agent, placed all of the calls she received. *See* ECF No. 11, ¶¶ 38, 40, 41 (alleging that "Defendant autodialed Plaintiff Debra Griffin" from three different phone numbers on February 10, March 2 and 7). However, the allegations underlying this conclusion are entirely speculative and wholly insufficient to plausibly state a theory of direct liability against American-Amicable. For example, Griffin alleges that "Defendant represented themselves as an entity called 'Senior Final Expenses' and explicitly stated that they were calling on behalf of American Amicable" on each of the calls she received.

ECF No. 11, ¶¶ 38, 40, 41. If the FAC is alleging that Senior Final Expenses placed the calls "on behalf of" American-Amicable, that is not the same as American-Amicable itself physically placing the calls. *See Bennett,* 2022 WL 865837, at *3 (dismissing TCPA claim on direct liability theory on grounds that "a defendant 'generally does not [physically] initiate calls [within the meaning of the TCPA for direct liability purposes] placed by third-party telemarketers,' even if the third party had acted on its behalf.") (citation omitted). *See also Wick,* 2017 WL 2964855, at *3 ("[M]erely offering a good or service for sale does not mean that a retailer initiates the marketing calls for that product"); *Abante Rooter,* 2018 WL 288055, at *4 (holding allegations that the plaintiff received a call from someone purportedly calling on behalf of the defendant insufficient for direct liability).

If the FAC is instead arguing that American-Amicable is directly calling consumers while misrepresenting itself to be Senior Final Expenses (and this is not clear nor is it conceded here), then Griffin offers no facts supporting that conclusion. *See, e.g., Cunningham v. Daybreak Solar Power, LLC,* 2023 WL 3985245, at *2 (dismissing on this basis where the plaintiff did not plead any facts supporting his conclusion the name used by the caller was a "trade or marketing name" used by the defendant rather than the real name of the actual caller, noting "that such conclusory assertions fail to plausibly show that Defendant [itself] physically initiated the phone call"). Indeed, the FAC's few (if any) non-conclusory allegations directly undercut any argument that American-Amicable itself, and not some third party named Senior Final Expenses, placed the call for several reasons. First, Griffin alleges that the calls she received came from three different numbers ending in 0713, 0008, and 4983, respectively. *See* ECF No. 11, ¶¶ 38, 40, 41. But the FAC does *not* allege that these numbers belong to, or are associated with, American-Amicable in any way. *See id.* Rather, the FAC at best alleges that the "phone calls originated from multiple telephone numbers which

upon information and belief are owned and operated by Defendant **and/or Defendant's agent**."
*Id.*, ¶ 48 (emphasis added). These bald conclusory allegations, made purely on information and
belief, are routinely found insufficient to state a claim for direct liability. *Kauffman v. CallFire,*
*Inc.*, 2014 WL 12778843, at *2 (S.D. Cal. Sept. 9, 2014) (allegation that defendant sent text
messages on direct liability theory, made "on information and belief," were "without further
elaboration, are insufficient to state a claim under the TCPA. They do not explain how Plaintiff
knew that Defendant placed the text messages[.]"); *Drew v. Lexington Consumer Advoc., LLC,*
2016 WL 1559717, at *9 (N.D. Cal. Apr. 18, 2016) ("[Plaintiff] does not plausibly show that it
was [defendant] that sent the text messages. He alleges throughout the FAC and declares that
[defendant] sent the messages. He does not identify how he knows this."); *Bank*, 2015 WL
1650926, at *2 (rejecting similarly conclusory allegations as to the origin of the purported calls);
*Aaronson*, 2019 WL 8953349, at *2 ("[W]ithout any facts to explain why plaintiff believes the
identified phone number is owned by defendant, ... plaintiff has failed to plead facts sufficient to
support a theory of direct liability….").

Second, the FAC makes abundantly clear that Plaintiffs do not know who actually physically
placed the calls at issue. The FAC repeatedly alleges that it was either American-Amicable or an
unidentified third party or parties who physically placed the calls. ECF No. 11, ¶¶ 29, 31, 33, 34,
48. Such obviously "[c]ontradictory allegations" not only fail to state a direct TCPA liability claim,
but they also "are inherently implausible, and [thus] fail to comply with Rule 8, *Twombly*, and
*Iqbal*" and cannot avoid dismissal under Rule 12(b)(6) in this or any case. *Hernandez v. Select*
*Portfolio, Inc.*, 2015 WL 3914741, at *10 (C.D. Cal. June 25, 2015). Courts facing allegations
similar to those advanced by Plaintiff Griffin have found those allegations insufficient to plausibly
suggest that American-Amicable, and not some third-party, placed the calls at issue. *See*, *e.g.*,

*Cunningham v. Daybreak Solar Power, LLC*, 2023 WL 3985245, at *2; *see also Childress,* 2018 WL 4684209, at *3 (dismissing on this basis, where plaintiff did not plead factual support for his conclusion the defendant used a "fake name" to place calls); *Belleville v. Florida Insur. Services, Inc.,* 2024 WL 2342337, at *4 (S.D. Fla. May 23, 2024), report and recommendation adopted in part, rejected in part, 2024 WL 2794108 (S.D. Fla. May 31, 2024) (recommending dismissal on this basis where the plaintiff alleged "in conclusory fashion that [d]efendant was directly involved in making" the subject calls without factual support); *Armstrong v. Investor's Bus. Daily, Inc.,* 2018 WL 6787049, at *9 (C.D. Cal. Dec. 21, 2018) (dismissing TCPA claim on direct liability grounds where it was equally plausible that any of the defendants could have sent the text messages due to plaintiff's vague description of the calls). The result should be the same here.

In sum, the FAC should be dismissed under Rule 12(b)(6) as it fails to allege any nonconclusory facts that American-Amicable physically initiated any of the calls at issue, as is required to plead direct TCPA liability under the vast weight of applicable federal authority.

### 2. Plaintiffs Fail to Plausibly Allege Vicarious TCPA Liability

To the extent the FAC attempts to advance a vicarious TCPA liability theory, it fails to do so. Vicarious liability cannot be casually pled. Rather, courts uniformly require plaintiffs to meet a certain pleading threshold before dragging an otherwise innocent party into litigation over the alleged conduct of another. To this end, federal courts uniformly apply common law agency principles to determine vicarious TCPA liability. *See Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 450 (9th Cir. 2018) (citing Restatement (Third) of Agency ("Restatement")). These common law "bedrock theories of agency" include "actual authority, apparent authority, and ratification." *Abante Rooter and Plumbing, Inc. v. Alarm.com Inc.*, 2018 WL 3707283, at *3 (N.D. Cal. Aug. 3, 2018). "Although the precise details of the agency relationship need not be pleaded to survive a motion to dismiss, sufficient facts must be offered to support a reasonable inference that a[] [common law]

PAGE 17 – DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE PLAINTIFF'S FIRST AMENDED COMPLAINT

agency relationship existed." *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1301 (D. Nev. 2014). No such facts are present here.

a)    *The FAC Fails to Allege American-Amicable's Actual Authority Over Any Third Party Caller*

To show actual authority, Plaintiffs must plausibly allege, with sufficient non-conclusory facts, "that [American-Amicable] controlled the 'manner and means' of the call[s]" made by the unidentified third party caller. *Canary v. Youngevity Int'l, Inc.*, 2019 WL 1275343, at *6 (N.D. Cal. Mar. 20, 2019) (no actual authority even where the alleged principal had the right to pre-approve any advertising materials); *see also Assurance IQ, LLC*, 2023 WL 2646468, at *6 (citing *Fabricant v. Elavon, Inc.*, 2020 WL 11884505, at *4 (C.D. Cal. Aug. 25, 2020)) (ruling similarly and dismissing on this basis as well); *Postmates Inc.*, 2020 WL 3869191, at *4 (dismissing where plaintiff failed to sufficiently "allege that [the defendant] had some degree of control over who sent the text and the manner and means by which it was sent"); *Naiman v. TranzVia LLC*, 2017 WL 5992123, at *6 (N.D. Cal. Dec. 4, 2017) (no actual authority where complaint had "not pled a single fact demonstrating that [principal] actually had control over [agent] such that it can be held vicariously liable for any of [agent]'s purported violations of the TCPA"); *Salaiz v. eHealthInsurance Srvs., Inc.*, 2023 WL 2622138 (N.D. Cal. Mar. 22, 2023) ("[A] plaintiff must show not only an agency relationship, but 'must also establish actual authority to place the unlawful calls.'"). Again, "[t]hough 'the precise details of the agency relationship need not be pleaded to survive a motion to dismiss, sufficient **facts** must be offered to support a reasonable inference that an [actual] agency relationship existed.'" *Meeks*, 2018 WL 1524067, at *5 (emphasis added); *see also Bank*, 2019 WL 2280731, at *3 ("The existence of some connections between the defendant and the maker of the call will not suffice" for vicarious TCPA liability purposes.).

Here, the FAC contains no allegations that American-Amicable exercised any control over

any third party that allegedly made the calls. *See* ECF No. 11. The FAC simply alleges that the calls were placed "by Defendant and/or Defendant's agent," or that the calls were placed by "an entity called 'Senior Final Expenses' calling on behalf of American-Amicable." *See id.*, ¶¶ 29, 31, 33, 48. But these conclusory allegations, which merely reflect the use of legal buzzwords, say nothing about whether American-Amicable controlled the manner and means of any third party telephonic outreach to Plaintiffs. The only allegation that even tangentially touches upon the issue of control is the statement that "Defendant – or third parties directed by Defendant dialed numbers without to make [*sic*] non-emergency telephone calls to the telephones of Plaintiffs and the other members of the Class defined below." *Id.*, ¶ 65. The bare allegation that American-Amicable "directed" some unidentified third party to place the calls, however, is nothing more than a legal conclusion that is unsupported by any other factual allegation in the FAC, and therefore insufficient to establish actual authority. *See*, *e.g.*, *Barker v. Sunrun Inc.,* 2019 WL 1983291, at *3-4 (D.N.M. Apr. 29, 2019) (dismissing on this basis, "Plaintiff's alleged connection, that the offending calls were directed by or at least at the behest of Sunrun ... constitutes a legal conclusion."); *Hamilton*, 2020 WL 2614625, at *2-3 (dismissing, in part, on vicarious liability grounds where the agency allegations were merely conclusory and unsupported); *Hale v. Teledoc Health, Inc.*, 2021 WL 1163925, at *4 (S.D.N.Y. Mar. 25, 2021) ("[T]he inclusion of [defendant's] services in [the caller's] insurance bundle, alone, is insufficient to permit even a circumstantial inference that [the third party caller] called plaintiffs at [defendant's] direction or subject to [defendant's] control.").

     *b)*     *The FAC Fails to Allege American-Amicable's Apparent Authority Over Any Third Party Caller*

     The common law agency theory of apparent authority "can only 'be established by proof of something said or done by the alleged principal, on which the plaintiff reasonably relied." *Thomas*, 582 F. App'x at 679; *see also* *Pascal*, 2019 WL 5212961, at *4 ("Apparent authority

exists only as to those to whom the principal has manifested that an agent is authorized. There is, therefore, tort liability only if such a manifestation and its execution by the apparent agent results in harm."). Reasonable reliance to the plaintiff's detriment is an essential element of any apparent authority theory. *Thomas*, 582 F. App'x at 679–80 (affirming dismissal of vicarious liability theory premised on apparent authority where "[Plaintiff] has not shown that she reasonably relied, much less to her detriment, on any apparent authority with which [defendant] allegedly cloaked the [agents]."). Accordingly, courts have dismissed vicarious liability claims at the pleadings stage asserting a theory of apparent authority theory where the pleadings did not plausibly "allege that [the plaintiff] reasonably relied upon something said or done by [the alleged principal] to [plaintiff's] detriment." *Canary*, 2019 WL 1275343, at *8; *see also Linlor v. Five9, Inc.*, 2017 WL 2972447, at *4 (S.D. Cal. July 12, 2017) (finding "Plaintiff does not allege that he reasonably relied, much less to his detriment, on any apparent authority with which Defendant allegedly cloaked the entity responsible for creating and sending the text messages") (cleaned up).

Here, even assuming *arguendo* that both Hessee and Griffin spoke to American-Amicable, which American-Amicable does not concede, the FAC does not allege that American-Amicable made any statements about the initial callers' authority to place the calls. *See* ECF No. 11, ¶¶ 31, 38, 40, 41. *See also Barnes*, 2023 WL 2592371, at *3 (dismissing on this basis where plaintiff did not plausibly allege the defendant had an agency relationship with the caller, notwithstanding that she alleged she was transferred to the defendant and received an email from the defendant after the call); *Cunningham v. Health Plan Intermediaries Holdings, LLC*, 2018 WL 835222, at *6 (N.D. Ill. Feb. 13, 2018) (rejecting argument callers had apparent authority "simply because they mentioned Defendants' products on their calls and sent him paperwork featuring Defendants' names").

For example, as to Plaintiff Hessee, the FAC does not allege that either Mr. Radcliffe or

Mr. Evans made any representations to him about "Sam from Funeral Expense['s]" authority to place the call. *Id.*, ¶ 31 (alleging only that Messrs. Radcliffe and Evans "solicited the sale of life insurance and specifically asked about his age, potential beneficiaries, and inquired about his interest in life insurance."). The FAC's allegations concerning Plaintiff Griffin's calls suffer from the same fatal defect. *Id.*, ¶¶ 38, 40, 41. To the extent Griffin is alleging that the first callers were from "Senior Final Expenses," the purported American-Amicable agents to whom she was ultimately transferred made no reference to whether "Senior Final Expenses" had authority to place the calls in the first instance. *See id.* (only alleging that American-Amicable's "agents" "tried to sell Plaintiff Griffin life insurance, explicitly referencing that they did so on behalf of American Amicable."). At bottom, neither Plaintiff alleges that American-Amicable made any representations concerning the initial callers' authority to place the calls. Moreover, the FAC also lacks any allegations that Plaintiffs relied on any representations made by those individuals who purportedly worked for, or were agents of, American-Amicable, let alone to their detriment. *See* ECF No. 11. Without any representations made by American-Amicable about a third party caller's authority to place calls, or Plaintiffs' reasonable reliance on those representations, there can be no vicarious liability on an apparent authority theory. *Canary*, 2019 WL 1275343, at *8; *Linlor*, 2017 WL 2972447, at *4.

<i>c)</i>    <i>The FAC Fails to Allege that American-Amicable Ratified the Conduct of Any Third Party Caller</i>

The common law agency theory of ratification arises "under traditional agency principles if it ratifies those acts by knowingly accepting their benefits." *Kristensen v. Credit Payment Servs. Inc.*, 2015 WL 4477425, at *3 (D. Nev. July 20, 2015), *aff'd*, 879 F.3d 1010 (9th Cir. 2018). Critically, however, "the principal-agent relationship is still a requisite, and ratification can have no meaning without it." *Thomas*, 582 F. App'x at 680. Thus, even where an agency relationship

(*i.e.,* actual authority) is shown, ratification requires that "the principal must either (1) have actual knowledge of all material facts about the agent's act or (2) should have known of the actual facts because a reasonable person under the circumstances would have 'investigate[d] further.'" *Kristensen*, 2015 WL 4477425, at *3. Moreover, to plead a ratification theory, the defendant must have actual knowledge that an agent is sending messages in violation of the TCPA. *See*, *e.g.*, *Kristensen v. Credit Payment Servs. Inc.*, 879 F.3d 1010, 1014 (9th Cir. 2018) ("Although AC Referral was an agent of Click Media, Kristensen presented no evidence that Click Media had actual knowledge that AC Referral was sending text messages in violation of TCPA."); *Fabricant*, 2020 WL 11884505, at *6 ("In the context of the TCPA, ratification requires 'actual knowledge that the agent was violating the TCPA' or 'knowledge of facts that would have led a reasonable person to investigate whether the agent was acting in compliance with the law.'") (cleaned up) (quoting *Kristensen*, 879 F.3d at 1014-15). *See also Landy*, 2021 WL 3634162, at *3 (dismissing on this basis, and holding that "[a]n entity cannot be held [vicariously] liable under the TCPA 'merely because they stand to benefit from the call'") (citation omitted).

Here, as discussed at length above, the FAC fails to allege agency between American-Amicable and "Funeral Expense" or "Senior Final Expenses" in relation to the calls at issue. Without the predicate principal-agent relationship, vicarious liability claims based on a ratification theory are subject to dismissal. *Pascal*, 2019 WL 5212961, at *4. Even had the FAC sufficiently alleged an agency relationship between American-Amicable and some other third party (and it has not), ratification can only be demonstrated "by a 'knowing acceptance of the benefit' or through 'willful ignorance.'" *Postmates Inc.*, 2020 WL 3869191, at *7 (quoting *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1073 (9th Cir. 2019), *as amended on denial of reh'g and reh'g en banc* (May 6, 2019)). Critically, though, "[t]he principal is not bound by a ratification

made without knowledge of material facts about the agent's act unless the principal chose to ratify with awareness that such knowledge was lacking." *Kristensen*, 879 F.3d at 1014.

As applied here, the FAC appears to be advancing a vicarious liability theory premised on ratification through bald allegations that "Defendant benefited from the potential sale of life insurance policies" because the callers "attempted to sell Defendant's products and services." ECF No. 11, ¶¶ 33, 42. The FAC also alleges, on information and belief, that "Defendant was aware that the insurance agents that were calling Plaintiff were making calls on Defendant's behalf[.]" *Id.*, ¶ 34. Even assuming *arguendo* that Plaintiffs were transferred to American-Amicable employees or representatives, merely being transferred to a defendant and being offered a defendant's goods and services is insufficient to establish ratification without more. *Kristensen*, 879 F.3d at 1015 ("The knowledge that an agent is engaged in an otherwise commonplace marketing activity is not the sort of red flag that would lead a reasonable person to investigate whether the agent was engaging in unlawful activities."); *Postmates Inc.*, 2020 WL 3869191, at *8 (dismissing vicarious liability theory premised on ratification where plaintiff only alleged that defendant was aware that an agent was "sending text messages on its behalf."); *Landy*, 2021 WL 3634162, at *5 (finding insufficient plaintiff's allegation that defendant "must have assented to and received a benefit from the prior callers' actions" "because [plaintiff] was eventually transferred to [defendant] and solicited to buy green energy products").

Therefore, the FAC fails to support any theory of agency applicable to American-Amicable with non-conclusory facts. As such, the FAC should be dismissed in its entirety for failure to allege any viable theory of TCPA liability against American-Amicable. *See Nelums*, *supra*.

**B.**    **The FAC Should Also Be Dismissed Under Rule 12(b)(6) Because Plaintiffs Lack a Private Right of Action Under 47 C.F.R. § 1601(e)**

The one-count FAC improperly alleges violations of two distinct TCPA provisions: (1) the

TCPA's National DNC Registry provisions, 47 U.S.C. § 227(c)(5), and (2) the Caller ID requirements codified in the TCPA's implementing regulations, 47 C.F.R. § 64.1601(e). The Court should dismiss Plaintiffs' claim for at least three reasons: (i) conflating distinct causes of action makes the FAC a quintessential "shotgun pleading" that violates Rule 8's basic pleading standards; (ii) Section 1601(e) does not afford litigants a private right of action; and (iii) even if there were a private cause of action, Plaintiffs fail to plead sufficient facts demonstrating a violation.

**First**, Plaintiffs' singular cause of action conflates two separate and distinct provisions of the TCPA as a single violation of the TCPA's Do-Not-Call provisions at 47 U.S.C. § 227(c)(5). The "conflating of [] distinct claims into a single cause of action fails to satisfy Rule 8's basic pleading standard," and this failure is sufficient to warrant dismissal of a claim. *Williamson v. McAfee, Inc.*, *2014 WL 4220824, at \*8 (N.D. Cal. Aug. 22, 2014)* (dismissing claim that alleged violations of three separate California consumer protection statutes). Here, the distinct elements are readily apparent. Section 227(c)(5), by its plain terms, allows consumers to bring a claim only where they have "received more than one telephone call within any 12-month period by or on behalf of the same entity" if that consumer's phone number is registered on the National DNC List. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2). By contrast, Section 64.1601(e)(1) of the TCPA's implementing regulations applies to callers that either fail to "transmit caller identification information" or "bloc[k] the transmission of caller identification information." 47 C.F.R. § 64.1601(e)(1), (2). These claims have nothing in common, and therefore the FAC should also be dismissed as an impermissible shotgun pleading as a result.

**Second**, even if the Court considers the sufficiency of the FAC's allegations despite the conflated claims, the Section 64.1601(e) claim fails for the simple reason that the regulation does not afford litigants a private right of action. Nearly every court to consider this question has

reached this same conclusion. It is well-settled that "[w]here a statutory scheme and its implementing regulations have expressly created a private right of action but have not expressly done so elsewhere in the same scheme, it is 'highly improbable' that Congress—or here, the FCC—'absent mindedly forgot to mention an intended private action.'" *Meyer v. Cap. All. Grp.*, 2017 WL 5138316, at *16 (S.D. Cal. Nov. 6, 2017) (quoting *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 20 (1979)). As such, the one court in the Ninth Circuit to directly address this question determined that "section 64.1601(e) [of the TCPA's implementing regulations] does not expressly convey a private right of action." *Meyer*, 2017 WL 5138316, at *17.

Whether Section 64.1601(e) provides a private right of action then turns on "whether § 64.1601(e) is promulgated under either subsection *b* or subsection *c* of the TCPA[,]" as those are the only subsections that afford consumers a private right of action. *Worsham v. Travel Options, Inc.*, 2016 WL 4592373, at *4 (D. Md. Sept. 2, 2016), *aff'd*, 678 F. App'x 165 (4th Cir. 2017) (emphasis in original). On its face, Subsection (b) of the TCPA "prohibits unconsented-to, nonemergency calls using any automatic telephone dialing system or an artificial or prerecorded voice to certain telephone lines, including any telephone number assigned to a cellular service," whereas subsection (c) of the statute, on its face, is "directed the FCC to promulgate regulations aimed at establishment and operation of a national database of telephone numbers of residential subscribers who object to receiving telephone solicitations and, further, permitted the FCC to prohibit telephone solicitations to any number in the database[.]" *Id.*

By contrast, if "a violation of § 64.1601(e)(1) is a violation of technical and procedural standards under subsection (d)"—as courts have held—then "no private right of action exists under that subsection of the TCPA." *Worsham v. Disc. Power, Inc.*, 2021 WL 3212589, at *4 (D. Md. July 29, 2021). Subsection (d) "makes it unlawful, *inter alia*, for anyone to make a telephone call

using an automatic telephone dialing system that does not comply with the technical and procedural standards prescribed by the FCC." *Id.* After thoroughly analyzing the TCPA's statutory language, its implementing regulations, the statutory scheme and legislative history, the *Worsham* court determined that "the FCC's rule in § 64.1601(e) appears to *support* consumers' enforcement efforts under the TCPA's subsection c, rather than to *create* a separate mechanism upon which a consumer can make an actionable claim." *Id.* at \*4 (emphasis in original). The *Worsham* court further explained that the subsections (b) and (c) of the TCPA have been addressed by the FCC's implementing regulations in 47 C.F.R. § 64.1200(a) and 64.1200(c) respectively. *Id.*

By contrast, Section 1600, including Section 1601(e), "are mostly in furtherance of the FCC's duty to regulate services of telephone carriers, in particular, 'to establish federal policies and rules governing calling number identification service (caller ID) on an interstate basis' made necessary by new telephone switching technology that 'has fostered new telephone services for both business and residential use.'" *Id.* at \*4 (quoting *Calling Number Identification*, 56 Fed. Reg. 57,300 (Nov. 8, 1991)). As the Court of Appeals of Michigan explained when addressing this same issue "when promulgating 47 CFR 64.1601(e), the FCC did not indicate that either subsection (b) or (c) was the statutory authority for that regulation. Had there been an intent to create a private right of action by Congress, or an understanding by the FCC that Congress had so intended, then one would expect more clarity in the statute or regulation, especially when private rights of action were expressly created elsewhere in the federal scheme." *Dobronski v. Transamerica Life Ins. Co.*, --- N.W.3d ----, 2023 WL 3665869, at \*8 (Mich. Ct. App. May 25, 2023).

Nearly every court to address this question, including the only court to decide this issue in the Ninth Circuit, has found that Section 64.1601(e) was promulgated under subsection (d) of the TCPA. *Meyer*, 2017 WL 5138316, at \*17 (dismissing claim with prejudice, holding that "[t]he

Court finds *Worsham* persuasive and—in conjunction with the Supreme Court's general guidance—finds section 64.1601(e) does not create a private right of action. The Court declines the invitation to infer a private right of action where section 64.1601(e) is silent on the matter."); *see also Worsham v. Travel Options, Inc.*, 2016 WL 4592373, at *4; *Dobronski v. Tobias & Assocs.*, 2023 WL 7005844, at *8 (E.D. Mich. Sept. 25, 2023), *report and recommendation adopted in part sub nom. Dobronski v. Tobias & Assocs., Inc.*, 2024 WL 1174553 (E.D. Mich. Mar. 18, 2024) (dismissing claim under Section 64.1601(e) on grounds that it does not create a private right of action); *Dobronski v. Total Ins. Brokers, LLC*, 2021 WL 4338957, at *7 (E.D. Mich. May 14, 2021), *report and rec. adopted in part, rejected in part*, 2021 WL 4452218 (Sept. 29, 2021) (same, dismissing with prejudice); *Worsham v. Direct Energy Servs., LLC*, 2021 WL 948819, at *3 (D. Md. Mar. 12, 2021), *aff'd*, 2022 WL 1261998 (4th Cir. Apr. 28, 2022) (finding no private right of action at summary judgment stage); *Dobronski v. SunPath Ltd.*, 2020 WL 8840311, at *7 (E.D. Mich. July 27, 2020) (finding no private right of action on motion to dismiss); *Dobronski v. Selectquote Ins. Servs.*, 462 F. Supp. 3d 784, 790 (E.D. Mich. 2020) (same, denying leave to amend). The Court should reject Plaintiffs' invitation to reach a different conclusion here.

**Third**, even if the Court finds that Section 64.1601(e) affords litigants a private right of action, the FAC's allegations do not support the claim. The FAC contains no allegations that American-Amicable was blocking Caller ID information, or causing inaccurate Caller ID information to be transmitted to Plaintiffs, beyond the hopelessly conclusory allegation that "Defendant's unsolicited telemarketing phone calls—including those that when called back prompted that 'the text mail subscriber is not working'—did not display the requisite caller ID information in violation of 47 C.F.R. § 1601(e), as promulgated by 47 U.S.C. § 227(c)." ECF No. 11, ¶ 51. There are a number of problems with this allegation. On the one hand, Plaintiffs provide

no details of what was shown on their Caller ID service when they received the calls beyond the number that called them, or, in the case of Plaintiff Griffin, only the last four digits of the number. *Id.*, ¶¶ 29–31, 38, 40, 41. On the other, the -9017 number described in this allegation was *not* the number that made any of the calls complained of, but rather is a callback number provided by individuals purportedly speaking to Griffin "on behalf of American-Amicable" *after she was transferred to them by the initial caller. Id.*, ¶¶ 38–41. There are simply no facts supporting American-Amicable's liability under this provision, even if a private right of action exists.

### C. Plaintiffs' Requests for Injunctive Relief Should also Be Dismissed Under Rule 12(b)(1) Because Plaintiffs Lack Article III Standing to Seek Such Relief

Further, in addition to other remedies, Plaintiffs generally seek injunctive relief. *See, e.g.,* ECF No 11, ¶¶ 4, 70 and Prayer for Relief. Yet, neither alleges any facts remotely suggesting that they are at any imminent risk of any ***future injury*** (*i.e.*, of receiving additional calls from or on behalf of American-Amicable in the future), as is required to demonstrate Article III standing for injunctive relief, in TCPA cases or in any others. *See*, *e.g.*, *Jones*, 2017 WL 3617104, at *4; *Miller*, 2016 WL 7471302, at *2–4 (dismissing request for injunctive relief in TCPA case for lack of standing where no allegations suggesting possible future harm to plaintiff); *see also Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (to have standing for injunctive relief, plaintiffs adequately plead that "the threatened injury is 'certainly impending,' or [that] there is a 'substantial risk' that the harm will occur."). Nor could they, as the most recent call any Plaintiff received was in March 2023—more than a year ago. *See* ECF No. 11, ¶ 41. Therefore, Plaintiffs' bald requests for injunctive relief should be dismissed under Rule 12(b)(1) for lack of standing, at the minimum.

### D. Any Dismissal Should Be With Prejudice

Lastly, Plaintiffs already amended their pleading but, despite having the benefit of American-Amicable's prior dispositive motion laying out many of the same fatal defects above

(*see* ECF No. 9), they ultimately did not cure those defects and in some ways made those defects worse, as demonstrated above. Dismissal with prejudice is appropriate in these circumstances. *See*, *e.g.*, *Frame v. Cal-W. Reconveyance Corp.*, 2011 WL 3876012, at *3 (D. Ariz. Sept. 2, 2011) (dismissing with prejudice where "despite the benefit and existence of fully-briefed motions to dismiss, [p]laintiff's First Amended Complaint fail[ed] to cure the deficiencies noticed in [d]efendants' prior motions"); *Jovanovic v. SRP Invs. LLC*, 2021 WL 4198163, at *4 (D. Ariz. Sept. 15, 2021) (dismissing TCPA claim with prejudice where "Plaintiff already has amended his [original] Complaint once in an attempt to remedy the precise infirmit[ies] at issue [in the defendant's motion to dismiss], but failed to do so"; thus, any "further amendment would be futile") (citing *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000)). This Could should rule similarly in the present case. Plaintiffs have had their "day in court" and, if they had any actual facts to allege, they could (and should) have pled them by now. That they did not leads to but one conclusion: no such facts exist. Therefore, American-Amicable submits that any further attempt at amendment would be futile, and as such that a dismissal with prejudice is appropriate.

## V.    <u>CONCLUSION</u>

For these reasons, American-Amicable respectfully requests this Court dismiss Plaintiffs' FAC in its entirety and with prejudice under Rules 12(b)(6) and 12(b)(1).

DATED this 6th day of June 2024.

TONKON TORP LLP

By: */s/ Jeffrey G. Bradford*
    Jeffrey G. Bradford, OSB No. 133080
    Email:    jeff.bradford@tonkon.com
    888 SW 5th Ave., Suite 1600
    Portland, Oregon 97204
    Telephone: (503) 802-5724

*Attorneys for Defendant American-Amicable Life Ins. Co. of Texas*

PAGE 29 – DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE PLAINTIFF'S FIRST AMENDED COMPLAINT

## <u>CERTIFICATE OF WORD COUNT</u>

This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains 9,955 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

DATED this 6th day of June 2024.

TONKON TORP LLP

By: */s/ Jeffrey G. Bradford*
     Jeffrey G. Bradford, OSB No. 133080
     Email:   jeff.bradford@tonkon.com