Jeffrey G. Bradford, OSB No. 133080
E-mail:jeff.bradford@tonkon.com
888 SW 5th Ave., Suite 1600
Portland, Oregon 97204
Telephone: (503) 802-5724

*Attorneys for Defendant*

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## EUGENE DIVISION

| | |
|---|---|
| DEBRA JOAN COATES GRIFFIN and ROBERT HESSEE, individually and on behalf of all others similarly situated, | Case No. 6:24-cv-00243-MC |
| Plaintiffs, | **DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS AND/OR STRIKE PLAINTIFF'S FIRST FAC** |
| v. | |
| AMERICAN-AMICABLE LIFE INS. CO. OF TEXAS, | **ORAL ARGUMENT REQUESTED** |
| Defendant. | |

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION. ........................................................................................ 1

II.     PLAINTIFFS FAIL TO ADEQUATELY ALLEGE DIRECT LIABILITY. ................... 2

III.    PLAINTIFFS FAIL TO ADEQUATELY ALLEGE VICARIOUS LIABILITY. ............ 5

        A.      Plaintiffs Fail to Adequately Allege Actual Authority. ......................................... 5

        B.      Plaintiffs Fail to Establish Apparent Authority. .................................... 9

        C.      The FAC Fails to Allege Ratification. ............................................... 11

IV.     SECTION 64.1601(e) DOES NOT AFFORD A PRIVATE RIGHT OF ACTION........ 13

V.      PLAINTIFFS LACK ARTICLE III STANDING TO SEEK INJUNCTIVE
        RELIEF. ................................................................................................ 16

VI.     PLAINTIFFS SHOULD NOT BE AFFORDED A THIRD OPPORTUNITY TO
        ATTEMPT TO PLEAD VIABLE CLAIMS. .................................................. 17

VII.    CONCLUSION..................................................................................... 18

# TABLE OF AUTHORITIES

**Page**

## CASES

*Abante Rooter & Plumbing v. Farmers Grp., Inc.*,
2018 WL 288055 (N.D. Cal. Jan. 4, 2018) ................................................................4

*Armstrong v. Investor's Bus. Daily, Inc.*,
2019 WL 2895621 (C.D. Cal. Mar. 12, 2019) .......................................................6, 7

*Bank v. Vivint Solar, Inc.*,
2019 WL 2280731 (E.D.N.Y. Feb. 25, 2019) ..........................................................8

*Barnes v. SunPower Corp.*,
2023 WL 2592371 (N.D. Cal. Mar. 16, 2023) .......................................................4, 7

*Belleville v. Florida Insur. Services, Inc.*,
2024 WL 2342337 (S.D. Fla. May 23, 2024) .......................................................3, 4

*Bennett v. Celtic Ins. Co.*,
2022 WL 865837 (N.D. Ill. Mar. 23, 2022) ...........................................................3

*Blair v. Assurance IQ LLC*,
2023 WL 6622415 (W.D. Wash. Oct. 11, 2023) .....................................................16

*Canary v. Youngevity Int'l, Inc.*,
2019 WL 1275343 (N.D. Cal. Mar. 20, 2019) .........................................................7

*Cannon v. Univ. of Chi.*,
441 U. S. 677 (1979) ..............................................................................14

*Chesbro v. Best Buy Stores, L.P.*,
705 F.3d 913 (9th Cir. 2012) ......................................................................8

*Cooley v. Freedom Forever, LLC*,
2019 WL 8126847 (D. Nev. Nov. 25, 2019) ...........................................................9

*Eminence Cap., LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) .....................................................................17

*Ewing v. Freedom Forever LLC*,
2021 WL 1087100 (S.D. Cal. Mar. 22, 2021) .........................................................10

*Hershey v. McMahon*,
2020 WL 913087 (D. Or. Jan. 14, 2020) .............................................................9

*Jones v. Royal Admin. Servs.*,
887 F.3d 443 (9th Cir. 2018) ......................................................................7

*Jovanovic v. SRP Invs. LLC*,
2021 WL 4198163 (D. Ariz. Sept. 15, 2021) .........................................................17

*Kristensen v. Credit Payment Servs.*,
12 F. Supp. 3d 1292 (D. Nev. 2014) .................................................................5

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Kristensen v. Credit Payment Servs. Inc.*,
  879 F.3d 1010 (9th Cir. 2018) .......................................................................12

*Landy v. Nat. Power Sources, LLC*,
  2021 WL 3634162 (D.N.J. Aug. 17, 2021) ...............................................4, 12

*Lemieux v. Lender Processing Ctr.*,
  2017 WL 1166430 (S.D. Cal. Mar. 29, 2017) ...............................................4

*Loper Bright Enterprises v. Raimondo*,
  No. 22-1219, --- U.S. ---, 2024 WL 3208360 (U.S. June 28, 2024).......................14

*Lopez v. Smith*,
  203 F.3d 1122 (9th Cir. 2000) ...................................................................17, 18

*Martin v. Bottom Line Concepts, LLC*,
  --- F. Supp. 3d ----, 2024 WL 1119982 (S.D.N.Y. Mar. 14, 2024) .......................16

*Meyer v. Cap. All. Grp.*,
  2017 WL 5138316 (S.D. Cal. Nov. 6, 2017) ...............................................13, 14

*Moore v. Charter Commc'ns, Inc.*,
  523 F. Supp. 3d 1046 (N.D. Ill. 2020) .......................................................10, 11

*Naiman v. Freedom Forever, LLC*,
  2019 WL 1790471 (N.D. Cal. Apr. 24, 2019) ...............................................5

*Naiman v. TranzVia LLC*,
  2017 WL 5992123 (N.D. Cal. Dec. 4, 2017) ...............................................6

*Pascal v. Agentra, LLC*,
  2019 WL 5212961 (N.D. Cal. Oct. 16, 2019)...............................................7

*Rahimian v. Adriano*,
  2022 WL 798371 (D. Nev. Mar. 16, 2022) ...............................................10

*Rogers v. Postmates Inc.*,
  2020 WL 3869191 (N.D. Cal. July 9, 2020)...............................................6, 7, 9

*Thomas v. Taco Bell Corp.*,
  582 F. App'x 678 (9th Cir. 2014)...............................................................11

*Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*,
  444 U.S. 11 (1979)...............................................................................13

*Tuso v. Nat'l Health Agents, LLC*,
  2021 WL 2534220 (E.D. Cal. June 21, 2021) ...............................................10

*Warciak v. Subway Restaurants, Inc.*,
  949 F.3d 354 (7th Cir. 2020) ...................................................................11

*Workman v. CarGuard Admin. Inc.*,
  2024 WL 249160 (D. Ariz. Jan. 23, 2024) ...............................................3, 4

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Worsham v. LifeStation, Inc.*,
2021 WL 5358876 (Md. Ct. Spec. App. Nov. 17, 2021) ........................................................ 14

*Worsham v. Travel Options, Inc.*,
2016 WL 4592373 (D. Md. Sept. 2, 2016) ......................................................................... 14

**STATUTES**

47 U.S.C. § 227(c) ................................................................................................. 14, 15

Private Securities Litigation Reform Act ......................................................................... 17

**OTHER AUTHORITIES**

47 C.F.R. § 64.1601(e) ......................................................................................... passim

47 C.F.R. § 1601(e) ............................................................................................... 15, 17

*In re Dish Network*,
28 FCC Rcd. 6574 .................................................................................................... 4

*Rules and Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991*,
68 FR 44144-01 ...................................................................................................... 15

**RULES**

Rule 12(b)(6) ........................................................................................................ 7, 8

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION.

The Motion to Dismiss (ECF No. 14, "Motion") Plaintiffs' First Amended Complaint (ECF No. 11, "FAC") filed by American-Amicable Life Ins. Co. of Texas ("American-Amicable") in this matter cited a number of directly on-point cases supporting its arguments that Plaintiffs' TCPA claims are ripe for dismissal in their entirety. Plaintiffs' Opposition to the Motion (ECF No. 15, "Opp.") does not address or attempt to distinguish *a single one*. Instead, Plaintiffs improperly attempt to amend the FAC through briefing and ask the Court to draw entirely unreasonable inferences in their favor from facts appearing nowhere in the FAC. At bottom, the FAC is bereft of any well pleaded factual allegations plausibly suggesting American-Amicable's liability under the TCPA in this action, and it should be dismissed with prejudice for at least the following reasons:

**First**, Plaintiffs argument that direct TCPA liability can be established by a caller merely purporting to be calling "on behalf of" an entity is patently false and refuted by the multitude of cases American-Amicable cited in the Motion on this issue. In fact, a third party calling on behalf of a defendant is not "direct" liability *by definition*. More than that, the only thing that is "clear" from the FAC's allegations is that Plaintiffs were called by a third-party, and their allegations that American-Amicable directly called them are entirely conclusory. Even Plaintiffs' Opposition *concedes* that the FAC is alleging that one of Defendant's "agents"—and not American-Amicable itself—physically placed the calls at issue. *See* Opp. at 14. None of Plaintiffs' authority, which Defendant addresses in full below, compels a contrary conclusion.

**Second**, Plaintiffs' appeals to "common sense" fall flat in the face of Ninth Circuit authority on the issue of vicarious TCPA liability. Plaintiffs offer a laundry list of supposed allegations in the FAC supporting the various theories of vicarious liability, but offer little in the

way of case law showing that those allegations have ever been dispositive in analyzing agency. That is because they are not. Further, Plaintiffs' contention that vicarious liability is incapable of being resolved at the pleadings stage is belied by the ample decisional authority in the Motion, which Plaintiffs do not address, finding allegations of agency inadequately pled at the pleading stage.

**Third**, it is well-established that 47 C.F.R. § 64.1601(e) does not afford litigants a private right of action. In their Opposition, Plaintiffs ask the Court to follow one unpublished state court decision from the Maryland Court of Appeals, while describing the well-reasoned decisions of federal courts nationwide who have thoroughly analyzed the TCPA as "flawed." It is Plaintiffs' statutory analysis that is flawed, not the decisions of *every* federal court to examine this issue.

**Fourth**, Plaintiffs lack Article III standing to pursue injunctive relief. Plaintiffs claim to be under threat of imminent harm, notwithstanding that the last message either of them purportedly received was 15 months ago. There is simply no basis for injunctive relief in this scenario.

**Fifth**, Plaintiffs ask for leave to amend to get a chance to address what they incorrectly refer to as "new arguments" made in the Motion with respect to their Section 64.1601(e) claim, which was not asserted in their original complaint. However, if the Court finds that this claim fails as a matter of law for lack of a private action, as every federal court to examine the issue has correctly held, then there is simply no basis to allow Plaintiffs a *third* bite of the apple to plead that Defendant is directly or vicariously liable with additional facts that should already have been in Plaintiffs' possession as the recipients of these calls.

## II.    PLAINTIFFS FAIL TO ADEQUATELY ALLEGE DIRECT LIABILITY.

Plaintiffs argue that the FAC adequately pleads direct TCPA liability because the calls at issue "directly promoted Defendant's products and the last call specifically provided a call-back number to Defendant[.]" ECF No. 15 at 8, 9. This misstates the factual allegations pleaded in the

FAC and runs directly contrary to the weight of applicable federal authority on this issue.

To begin, Plaintiffs rely almost exclusively on *Workman v. CarGuard Admin. Inc.*, 2024 WL 249160 (D. Ariz. Jan. 23, 2024)[1], for the proposition that "[i]f a caller associates with a specific company, it is plausible to believe that that company is directly liable for the calls." ECF No. 15, at 7, 8. This reliance is misplaced, as the allegations pled in *Workman* are materially different from those pled in Plaintiffs' FAC here. In *Workman*, the identity of the caller was not disclosed by any of the callers with whom plaintiff spoke, and it was not until plaintiff received a contract from one of the callers that made "clear that the policy, should Plaintiff purchase it, would be administered by Defendant and the contract for services would be between Plaintiff and Defendant," and that contract was attached as an exhibit to the complaint. 2024 WL 249160, at *2. Here, by stark contrast, the callers clearly represented that they were calling from an entity called either "Funeral Expense" (ECF No. 11, ¶¶ 29–31) or "Senior Final Expenses" (*id.*, ¶¶ 38, 40, 41).

Moreover, in *Workman*, the only plausible explanation for who placed the calls on the facts alleged was that defendant placed them because no other entity was mentioned on any of the calls. 2024 WL 249160, at *2. Assuming arguendo that merely mentioning a defendant's name on a call is enough to plead direct liability (and it is not), such an inference cannot be drawn where the callers here indicated that they were calling from an entity *entirely distinct from American-Amicable,* even if the caller indicated they were calling "on behalf of" American-Amicable. *See* ECF No. 14 at 12, 13 (citing cases). Indeed, it is well-accepted that, for direct TCPA liability purposes, "a defendant 'generally does not [physically] initiate calls placed by third-party telemarketers,' even if the third party had acted on its behalf." *Bennett v. Celtic Ins. Co.,* 2022 WL 865837, at *3 (N.D. Ill. Mar. 23, 2022) (dismissing on this basis); *see also Belleville v. Florida Insur.*

---

[1] The Opposition incorrectly refers to this case as "Wokeman" with a Lexis cite. ECF No. 15 at 7.

*Services, Inc.,* 2024 WL 2342337, at *4 (S.D. Fla. May 23, 2024), *report and rec. adopted in part and rejected in part,* 2024 WL 2794108 (May 31, 2024) (dismissing where the plaintiff alleged "in conclusory fashion that [d]efendant was directly involved in making" the subject calls without factual support); *Abante Rooter & Plumbing v. Farmers Grp., Inc.,* 2018 WL 288055, at *4 (N.D. Cal. Jan. 4, 2018) (allegations caller represented they were calling "on behalf of defendant" insufficient to establish direct liability). The FCC also has confirmed that calls purportedly made "on behalf of" a defendant are properly analyzed as vicarious liability claims where agency is the relevant consideration—not direct liability. *In re Dish Network,* 28 FCC Rcd. 6574, 6585-86 ¶¶ 30-31. In short, *Workman* does not support a finding of direct TCPA liability here.

Plaintiffs' reliance on *Lemieux v. Lender Processing Ctr.,* 2017 WL 1166430 (S.D. Cal. Mar. 29, 2017), is likewise misplaced. In *Lemieux,* plaintiff initially spoke to a caller who represented they were calling from one defendant, but when plaintiff was subsequently transferred to a second caller he was informed that the initial call was actually placed by the second defendant. 2017 WL 1166430, at *5. Here, none of the callers to whom Plaintiffs were transferred conceded that American-Amicable, rather than Funeral Expense or Senior Final Expenses, was responsible for placing the initial call. ECF No. 11, ¶¶ 30, 31, 38, 40, 41. As such, *Lemieux* is distinguishable.

Lastly, Plaintiffs' unsupported argument that direct TCPA liability can be demonstrated if a caller is transferred to a defendant is simply wrong. ECF No. 15 at 8. To be sure, American-Amicable's Motion cites ample authority—none of which Plaintiffs' Opposition even mentions, let alone tries to refute—demonstrating that merely being transferred to a defendant from the initial caller is insufficient to support a plausible inference of direct TCPA liability. *See* ECF No. 14 at 13, 14. Plaintiffs offer no authority supporting their contrary view, only the arguments of counsel. *See* ECF No. 15 at 8.

Plaintiffs' theory of direct liability should therefore be dismissed with prejudice.

## III.    PLAINTIFFS FAIL TO ADEQUATELY ALLEGE VICARIOUS LIABILITY.

Plaintiffs contend that the FAC adequately alleges vicarious liability against American-Amicable under all three common law agency principles: (1) actual authority, (2) apparent authority, and (3) ratification. ECF No. 15 at 9–16. Despite again failing to engage with American-Amicable's authority to the contrary, none of Plaintiffs' arguments support a plausible inference that American-Amicable controlled the "manner and means" of the outreach of any initial caller, which is the well-accepted touchstone of agency in the TCPA context. See ECF No. 14 at 18.

As a threshold matter, Plaintiffs' argument that the Court should not examine the adequacy of the FAC's vicarious liability allegations is wholly without merit. ECF No. 15 at 6 n. 1. Courts routinely examine at the pleadings stage whether a complaint's allegations plausibly support a finding of vicarious liability and dismiss. See ECF No. 14 at 17–23 (collecting cases); Naiman v. Freedom Forever, LLC, 2019 WL 1790471, at *4 (N.D. Cal. Apr. 24, 2019) ("Although the precise details of the agency relationship need not be pleaded to survive a motion to dismiss, sufficient facts must be offered to support a reasonable inference that an agency relationship existed.") (quoting Kristensen v. Credit Payment Servs., 12 F. Supp. 3d 1292, 1301 (D. Nev. 2014)). Beyond that, Plaintiffs' arguments in favor of their agency theories fall flat for a number of reasons:

### A.    Plaintiffs Fail to Adequately Allege Actual Authority.

Plaintiffs' argument that the FAC adequately alleges actual authority misconstrues the allegations necessary to support such a finding. ECF No. 15 at 10–12.

In this regard, Plaintiffs argue that a caller indicating that they are calling "on behalf of" an entity and thereafter being transferred to that entity is sufficient to establish American-Amicable's control over the "manner and means" of the initial caller's telemarketing efforts. Id. These facts are simply not relevant to the actual authority analysis, which instead turns on whether

Plaintiffs have alleged specific, non-conclusory, facts that American-Amicable controlled the actions of the initial caller—and, more precisely, that caller's telemarketing campaign (*i.e.*, how the campaign is literally conducted, such as whom to call, when to call, and how to call). *See* ECF No. 14 at 18, 19 (collecting cases); *Rogers v. Postmates Inc.*, 2020 WL 3869191, at *4 (N.D. Cal. July 9, 2020)* (dismissing vicarious liability theory premised on actual authority due to lack of facts showing control over the initial caller, explaining that "there are no allegations here that Postmates directed [the alleged agent] to send text messages as part of the marketing campaigns; that it dictated the content of any message or other communication sent by [the alleged agent]; that it identified or otherwise controlled to whom or how or when [the alleged agent] sent such communications; that it equipped [the alleged agent] with any technological capability or other insider information necessary for executing the marketing campaign; or even that it 'controlled' or 'directed' [the alleged agent] in any way. There is no allegation that Postmates communicated to [the alleged agent] that text messages could or should be part of the marketing campaign.").

In the present case, Plaintiffs' FAC contains not one of the allegations the *Postmates* court (or others cited in the Motion) found could plausibly suggest a finding of actual authority. And even if Plaintiffs had made allegations that American-Amicable exercised some control over these initial callers, "to state a plausible claim based on actual authority, a plaintiff must also allege facts showing that the defendant had the right to control 'the manner and means of the calls made.'" *Id.*, at *4 (quoting *Naiman v. TranzVia LLC*, 2017 WL 5992123, at *10 (N.D. Cal. Dec. 4, 2017)). No such facts are pled in Plaintiffs' FAC, and their Opposition does not demonstrate otherwise.

The scant case law Plaintiffs offer to resist this conclusion is inapposite. ECF No. 15 at 11. For example, Plaintiffs contend that *Armstrong v. Investor's Bus. Daily, Inc.*, 2019 WL 2895621, at *5 (C.D. Cal. Mar. 12, 2019), stands for the proposition that actual authority is incapable of

determination at the motion to dismiss stage. See ECF No. 15 at 11. Not so. For one thing, if Plaintiffs were right, courts would never dismiss TCPA claims at the pleadings stage on vicarious TCPA liability grounds in any case. The myriad of cases cited in the Motion, and many others, show that this is simply not true; and federal courts often dismiss TCPA claims on this basis under Rule 12(b)(6). For another, Plaintiffs misconstrue the holding *Armstrong*.

In *Armstrong*, defendant moved to dismiss on the grounds that the complaint failed to allege sufficient facts to satisfy the 10 factor considerations articulated by the Ninth Circuit to determine whether "a principal has enough authority to control the actions of its agent such that the principal may be held vicariously liable to the same extent as an employer may be held liable for the conduct of its employee." *Id.* at *5 (quoting *Jones v. Royal Admin. Servs.*, 887 F.3d 443, 451 (9th Cir. 2018)). The court explained that the 10 factor test in *Jones* is only of use "for determining whether a principal, who has hired third-party telemarketers, exercises sufficient control to be held vicariously liable under the TCPA to the same degree that an employer may be held liable for the actions of its employees[,]" but the court "express[ed] no opinion on the usefulness of these factors in establishing other common law theories for holding a principal liable for the conduct of its agent." *Id.* Actual authority is one of these "other common law theories" referred to in *Jones*, and courts regularly evaluate the sufficiency of allegations regarding actual authority, where the complaint does not premise the vicarious liability theory on an employee-employer relationship. *See*, *e.g.*, *Barnes v. SunPower Corp.*, 2023 WL 2592371, at *3 (N.D. Cal. Mar. 16, 2023); *Rogers*, 2020 WL 3869191, at *3; *Pascal v. Agentra, LLC*, 2019 WL 5212961, at *3 (N.D. Cal. Oct. 16, 2019); *Canary v. Youngevity Int'l, Inc.*, 2019 WL 1275343, at *5 (N.D. Cal. Mar. 20, 2019).

Further, Plaintiffs' insinuation that courts approach allegations of actual authority "with a

measure of common sense" where that relationship is "clear from the context" grossly misrepresents the Ninth Circuit case from which this analysis is purportedly drawn. *See* ECF No. 15, p. 11 (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)). In fact, the Ninth Circuit's decision in *Chesbro* does not even discuss the issue of vicarious liability, let alone the standards for pleading it under Rule 12(b)(6). Instead, the question before the *Chesbro* panel was whether defendant's messages constituted advertising under the TCPA. *See* 705 F. 3d at 918. The panel viewed the messages sent "with a measure of common sense" and determined from the content of the messages that "the calls encouraged the listener to make future purchases at Best Buy. Neither the statute nor the regulations require an explicit mention of a good, product, or service where the implication is clear from the context. Any additional information provided in the calls does not inoculate them." *Id. Chesbro* does not relax the requirement that Plaintiffs plead non-conclusory factual content suggesting that American-Amicable has the right to control the manner and means of a caller's telemarketing campaign, as required to establish actual authority.

Lastly, Plaintiffs' Opposition argues that the initial callers used company names such as "Funeral Expense" and "Senior Final Expenses," in addition to the "identical method of vetting and transfer" shows a "coordinated telemarketing campaign" that displays "textbook third-party telemarketing." ECF No. 15 at 11, 12. Even if the allegations in the FAC could be construed in the manner Plaintiffs describe in their Opposition, the mere existence of a relationship between American-Amicable and any initial caller is insufficient to establish *actual* authority. *See* ECF No. 14 at 18 (citing *Bank v. Vivint Solar, Inc.,* 2019 WL 2280731, at *3 (E.D.N.Y. Feb. 25, 2019), *report and rec. adopted,* 2019 WL 1306064 (Mar. 22, 2019) ("The existence of *some* connections between the defendant and the maker of the call will not suffice" for vicarious TCPA liability purposes.) (emphasis original). At best, the few "facts" pled in the FAC suggest a mutually

beneficial contractual relationship, which is insufficient, without more, to "allow the court to reasonably infer [defendant] exercised the necessary control over [the alleged agent] to constitute actual authority in the illegal autodialing activity" as is required to show actual authority. *Cooley v. Freedom Forever, LLC*, 2019 WL 8126847, at *3 (D. Nev. Nov. 25, 2019); *see also Rogers*, 2020 WL 3869191, at *4 (ruling similarly and dismissing). Moreover, the factual details of this purported scheme appear nowhere in the FAC, and of course Plaintiffs may not amend their FAC through briefing. *Hershey v. McMahon*, 2020 WL 913087, at *3 n. 1 (D. Or. Jan. 14, 2020), *report and rec. adopted*, 2020 WL 912743 (D. Or. Feb. 25, 2020) (declining to consider allegations raised in opposition to motion to dismiss which were not included in underlying complaint).

In sum, as there are no facts alleged in the FAC showing American-Amicable's control over the manner and means of the callers and their calling campaign, Plaintiffs' vicarious liability theory premised on actual authority should therefore be dismissed with prejudice.

### B.     Plaintiffs Fail to Establish Apparent Authority.

Undaunted, Plaintiffs argue at length that American-Amicable is liable on a theory of apparent authority. ECF No. 15 at 12–15. These arguments fall flat in the face of the legal standard that Plaintiffs concede applies: apparent authority requires a manifestation of the agent's authority to act on behalf of the principal *by some statements made by the principal* on which Plaintiffs *reasonably relied*. ECF No. 15 at 13. Facts supporting both elements are absent from the FAC.

Firstly, even assuming that Plaintiffs were transferred to American-Amicable, the purported principal, the FAC does not allege that American-Amicable made any representations to Plaintiffs regarding either of "Funeral Expense" or "Senior Final Expenses" to make any of the calls. ECF No. 11, ¶¶ 30, 31, 38, 40, 41. Indeed, Plaintiffs' entire argument is premised on representations made to them *by the initial callers*—not American-Amicable. ECF No. 15 at 14, 15. While Plaintiffs do identify representations purportedly made by American-Amicable, none of

these representations relate to whether the initial callers had the authority to place those calls. *Id.*

Plaintiffs' cited authority on this score either supports American-Amicable's argument, are wholly misconstrued, or both. For example, Plaintiffs argue that the court in *Ewing v. Freedom Forever LLC*, 2021 WL 1087100, at *4 (S.D. Cal. Mar. 22, 2021), found apparent authority properly alleged. ECF No. 15 at 14. Not so. Rather, that court rejected plaintiff's apparent authority theory after finding that "Plaintiff has alleged no act or statement by any Defendant made to him directly manifesting the alleged third-party caller's authority to act on Defendants' behalf." *Ewing*, 2021 WL 1087100, at *3. The court then evaluated whether the complaint adequately alleged "an agency relationship premised on actual authority" before holding it did. *Id.* at *3, *4. Plaintiffs' other cases provide no support for their apparent authority theory, either. *See Tuso v. Nat'l Health Agents, LLC*, 2021 WL 2534220, at *3 (E.D. Cal. June 21, 2021) (holding that plaintiff could not allege vicarious liability premised on actual authority where the principal made no representations that any caller had authority to act on defendant's behalf). Plaintiffs' apparent authority theory thus fails at step one, as "[s]tatements by an agent are insufficient to create apparent authority." *Moore v. Charter Commc'ns, Inc.*, 523 F. Supp. 3d 1046, 1053 (N.D. Ill. 2020).

Second, the FAC contains no allegations regarding either of the Plaintiffs' reasonable reliance on American-Amicable's representations. As Plaintiffs' own cited authorities recognize, there can be no apparent authority without "plead[ing] sufficient facts demonstrating reasonable reliance." *Rahimian v. Adriano*, 2022 WL 798371, at *5 (D. Nev. Mar. 16, 2022) (allegation that agent stated they were calling on behalf of defendant insufficient without allegations that plaintiff reasonably relied on those representations) (ECF No. 15 at 13). Plaintiffs attempt to rectify this pleading deficiency by opining on what a reasonable consumer would believe after receiving the calls at issue. *See* ECF No. 15 at 15. But none of these allegations about what a reasonable

-10-

consumer would believe appear anywhere in the FAC and, more importantly, do not touch on whether the *Plaintiffs* reasonably relied on anything American-Amicable said *to their detriment*. *See id*. As a matter of law, Plaintiffs cannot establish apparent authority without reasonably relying to their detriment on representations by American-Amicable that the initial callers had the authority to place the call. *See Thomas v. Taco Bell Corp.*, 582 F. App'x 678, 679-80 (9th Cir. 2014) (affirming dismissal of apparent authority theory on motion to dismiss, holding that "[plaintiff] has not shown that she reasonably relied, much less to her detriment, on any apparent authority with which Taco Bell Corp. allegedly cloaked the [alleged agents].."); *Warciak v. Subway Restaurants, Inc.*, 949 F.3d 354, 357 (7th Cir. 2020) (same, reasoning that "[plaintiff]'s complaint further fails to allege sufficient facts to show how he reasonably relied, to his detriment, on any apparent authority with which he alleges Subway cloaked T-Mobile."); *see also Moore*, 523 F. Supp. 3d at 1053 (holding no apparent authority alleged on motion to dismiss where plaintiff did "not allege that he did anything after receiving those emails. He did not purchase [defendant]'s services or even seek additional information about them."). In sum, Plaintiffs' FAC fails to support their apparent authority theory, and any vicarious liability claim premised on such a theory fails.

### C.    The FAC Fails to Allege Ratification.

As a last-ditch attempt to avoid dismissal on this basis, Plaintiffs argue that vicarious liability on a ratification theory can be established simply by virtue of a call being transferred to a purported American-Amicable employee, and nothing more. ECF No. 15 at 15, 16. Plaintiffs ignore the ample authority cited in American-Amicable's Motion categorically rejecting this interpretation of ratification. *See* ECF No. 14 at 21–23. Again, Plaintiffs do not address or attempt to distinguish any of them. Beyond that, Plaintiffs' ratification theory fails for a number of reasons:

First, to state a viable ratification theory Plaintiffs must show that there is an actual agency relationship between Defendant and the purported agent whose conduct Defendant has ratified

before ratification will be found. *See id.* at 21 (citing *Thomas*). As discussed in the Motion and in this Reply, Plaintiffs have not made this showing and their ratification theory fails at step one.

Second, the law is clear that ratification requires Defendant to have actual knowledge that its agent is sending messages in violation of the TCPA, not general awareness that telemarketing is occurring. *See*, *e.g.*, *Kristensen v. Credit Payment Servs. Inc.*, 879 F.3d 1010, 1014 (9th Cir. 2018) ("Although AC Referral was an agent of Click Media, Kristensen presented no evidence that Click Media had actual knowledge that AC Referral was sending text messages in violation of TCPA."). Plaintiffs' Opposition confirms that the only facts underpinning their ratification theory is their bald conclusion that American-Amicable "accepted the benefit of its agents' actions in the form of telemarketing promotions and transfers to which it attempted to solicit its services." ECF No. 15 at 16. The mere possibility of Defendant receiving a benefit from a call is not enough to plausibly allege a ratification theory. *See Landy v. Nat. Power Sources, LLC*, 2021 WL 3634162, at *3 (D.N.J. Aug. 17, 2021) (dismissing and holding that "[a]n entity cannot be held [vicariously] liable under the TCPA 'merely because they stand to benefit from the call'") (citation omitted).

Third, Plaintiffs have not alleged that Defendant was aware of circumstances that should have prompted it to investigate. Plaintiffs make the head scratching claim that "[i]f an individual marketer continuously transfers calls to a company after having vetted potential consumers, at a certain point—if even no actual authority existed—a company is bound to investigate." ECF No. 15 at 16. But that is precisely the kind of claim that the Ninth Circuit has found *not* to be the kind of activity that would put a defendant on notice of a need to investigate. *Kristensen*, 879 F.3d at 1015 ("The knowledge that an agent is engaged in an otherwise commonplace marketing activity is not the sort of red flag that would lead a reasonable person to investigate whether the agent was engaging in unlawful activities."). Even assuming that the individuals that transferred the calls

were "agents" of American-Amicable, which Defendant does not concede, their transfer of calls to Defendant would not lead a reasonable person to believe that a violation of the TCPA was occurring. *See id.* Nothing in the FAC suggests that Defendant was on notice of the "red flags" noted in *Kristensen* that would have prompted a duty to investigate. *See generally* ECF No. 11.

In all, Plaintiffs' ratification theory of vicarious liability fails because they have not alleged an actual agency relationship between American-Amicable and the initial callers, and they have not shown that American-Amicable either actually knew, or should have known, that the initial callers were placing calls in violation of the TCPA. Therefore, Plaintiffs' vicarious liability theory must fail, and because they do not plausibly allege a direct liability theory for the reasons above, the entirety of the FAC should be dismissed with prejudice. *See* ECF No. 14 at 8.

## IV.    SECTION 64.1601(e) DOES NOT AFFORD A PRIVATE RIGHT OF ACTION.

Though the Court need not rule further given the foregoing, Plaintiffs' argument that 47 C.F.R. § 64.1601(e) creates a private right of action rests on a tortured reading of the regulation adopted supported by an unreported case from the Maryland Court of Appeals. ECF 15 at 16–20.

At the federal level, it is well-settled that no private right of action exists where a regulation "simply proscribes certain conduct, and does not in terms create or alter any civil liabilities. If monetary liability to a private plaintiff is to be found, it must be read into the Act." *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 19 (1979). In a TCPA case, "[w]here a statutory scheme and its implementing regulations have expressly created a private right of action but have not expressly done so elsewhere in the same scheme, it is 'highly improbable' that Congress—or here, the FCC—'absent mindedly forgot to mention an intended private action.'" *Meyer v. Cap. All. Grp.*, 2017 WL 5138316, at *16 (S.D. Cal. Nov. 6, 2017) (quoting *Transamerica*, 444 US at 19) (finding no private right of action under 47 C.F.R. § 64.1601(e)).

Here, Plaintiffs must concede that Section 64.1601(e) does not *expressly* create a private

right of action for its enforcement. Indeed, none is found in the text. Moreover, even the unreported appellate case upon which Plaintiffs rely, *Worsham v. LifeStation, Inc.*, 2021 WL 5358876, at *17 (Md. Ct. Spec. App. Nov. 17, 2021), must concede that their determination that Section 64.1601(e) creates a private right of action "is not free from doubt and the lines between regulations authorized by § 227(c) and (d) (or, perhaps, some combination of both) could be far clearer[.]"

It is for this reason alone that the Court should disregard the holding in *Worsham* and not apply it here. Indeed, basic canons of statutory interpretation require clear indications that Congress intended to create a private right of action. *See Meyer*, 2017 WL 5138316, at *16 ("where Congress 'intends private litigants to have a cause of action,' the 'far better course' is for Congress to confer that remedy in explicit terms.") (quoting *Cannon v. Univ. of Chi.*, 441 U. S. 677, 717 (1979)). Plaintiffs' Opposition also concedes the precise point that "the FCC's rule in § 64.1601(e) appears to *support* consumers' enforcement efforts under the TCPA's subsection c, rather than to *create* a separate mechanism upon which a consumer can make an actionable claim." *Compare Worsham v. Travel Options, Inc.*, 2016 WL 4592373, at *4 (D. Md. Sept. 2, 2016), aff'd, 678 F. App'x 165 (4th Cir. 2017) (emphasis in original) *with* ECF No. 15 at 19 ("the purpose of the caller ID restrictions is to facilitate and assist consumers in enforcing their do-not-call rights."). This Court should refrain from creating a private cause of action where one does not exist.

Moreover, Plaintiffs' strange argument that Section 64.1601(e) affords a private right of action because the FCC's Final Rules on the issue cite Section 47 U.S.C. § 227(c) (which does afford a private cause of action) more often than Section 227(d) (which does not) is a nonstarter. On the one hand, in light of recent Supreme Court precedent, it is questionable whether this Court should give any deference to FCC interpretations on the TCPA going forward. *See generally Loper Bright Enterprises v. Raimondo*, No. 22-1219, --- U.S. ---, 2024 WL 3208360 (U.S. June 28, 2024)

(striking down the "*Chevron* deference" doctrine). On the other, Plaintiffs provide no authority that this factor has been used by any courts to divine whether a statute or regulation affords a private right of action by its plain terms. *See* ECF No. 15 at 19, 20. Moreover, Plaintiffs contend that Section 227(d) is only referenced in setting procedural standards for faxes and prerecorded calls. *Id.* But Plaintiffs neglect to mention that the FCC's discussion of Section 227(d) appears under the heading "***Identification Requirements.***" *Rules and Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991*, 68 FR 44144-01, ¶ 146 (emphasis in original).

Lastly, Plaintiffs have not adequately pled a violation of Section 64.1601(e) even if a private right of action exists. Plaintiffs argue that the violation is stated because most of the calls Plaintiffs received "did not display the requisite caller ID information in violation of 47 C.F.R. § 1601(e), as promulgated by 47 U.S.C. § 227(c)." ECF No. 15 at 20 (citing ECF No. 11, ¶ 51). But this allegation is entirely conclusory. Plaintiffs do not describe how the numbers appearing on their Caller IDs were deficient. Plaintiff Hesse indicates that he received calls from a number ending in -0532. ECF No. 11, ¶¶ 29–31. He does not explain what else appeared on his Caller ID when he received the calls or why this information is incorrect. *See id.* He does not even allege that he attempted to call the number back. *See id.* Plaintiff Griffin only alleges the last four digits of the number appearing on her Caller ID and does not allege how the information provided failed to comply with Section 64.1601(e). *Id.*, ¶¶ 38, 40, 41. She does not allege that she attempted to call any of the numbers placing the initial call back and failed to connect with the initial caller. *See id.*

Plaintiffs further contend that Section 64.1601(e) is designed to allow Plaintiffs an opportunity to call the numbers that place telemarketing calls to make opt out requests, and Plaintiffs here were deprived of that opportunity here. As stated above, Plaintiff Hessee never alleges in the FAC he attempted to call any numbers back to make an opt out request. ECF No. 11,

¶¶ 29–31. Plaintiff Griffin was allegedly given a callback number ending in -9017 by an agent she was transferred to after the initial caller. ECF No. 15, ¶¶ 38, 40, 41. It is worth noting that the *initial* complaint alleges that "Griffin's counsel called the 9017 line and received the message 'the text mail subscriber is not working.'" ECF No. 1, ¶ 31. The FAC makes counsel's involvement less obvious by amending the allegation to state "[w]hen the 9017 line was subsequently called back, a message was received that 'The text mail subscriber is not working.'" ECF No. 15, ¶ 39. The FAC simply never alleges that Griffin herself attempted to call back this number to make an opt out request. *See id.* To the extent Section 64.1601(e) operates in the manner described by Plaintiffs, and it does not, there are no facts from which this Court could reasonably infer that the regulation was violated here, as the FAC does not contain factual details regarding the inadequacies of the Caller ID presented or that Plaintiffs personally attempted to call the numbers on their Caller IDs and were unable to do so to make an opt out request, which is the whole purpose of the regulation.

In sum, the law is that Section 64.1601(e) does not provide a private right of action and, even if it did, Plaintiffs do not plead a violation. The Court should dismiss the claim with prejudice.

## V.    **PLAINTIFFS LACK ARTICLE III STANDING TO SEEK INJUNCTIVE RELIEF.**

Plaintiffs offer no legal support to counter American-Amicable's legal authority showing that injunctive relief is inappropriate where Plaintiffs are not at an immediate risk of future injury after not being contacted by Defendant for more than 15 months. ECF No. 15 at 21. Plaintiffs cannot resist that they lack standing to pursue injunctive relief where they received the last allegedly violative calls more than a year ago. *See Blair v. Assurance IQ LLC*, 2023 WL 6622415, at *5 (W.D. Wash. Oct. 11, 2023) (no standing to pursue injunctive in TCPA litigation where it had been "three months since the last alleged call."); *Martin v. Bottom Line Concepts, LLC*, --- F. Supp. 3d ----, 2024 WL 1119982, at *7 (S.D.N.Y. Mar. 14, 2024) (no Article III standing to pursue

injunctive relief where it had been "several months" since plaintiff received calls from defendant).

## VI.    PLAINTIFFS SHOULD NOT BE AFFORDED A THIRD OPPORTUNITY TO ATTEMPT TO PLEAD VIABLE CLAIMS.

Lastly, Plaintiffs argue that they should be allowed to file a Second Amended Complaint. ECF No. 15 at 21, 22. The Court should deny their request to amend under the circumstances.

First, Plaintiffs reliance on *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003) is misplaced. There, the Ninth Circuit applied a liberal amendment standard to pleadings alleging violations of the Private Securities Litigation Reform Act ("PSLRA"). *Id.* at 1052. In reversing a denial of leave to amend in that case, the panel noted that liberal principles were especially applicable "in the context of the PSLRA. The PSLRA requires a plaintiff to plead a complaint of securities fraud with an unprecedented degree of specificity and detail 'giving rise to a strong inference of deliberate recklessness.'" *Id.* Such concerns are not presented by the TCPA, however. This is especially true where Plaintiffs naturally have all of the information of what was said on the calls they received *as the recipients of these calls*. They have had all of the information regarding who they spoke to, what was said of the calls, what numbers the calls were placed from and other details at their disposal from the very start. Plaintiffs, for whatever reason, elected not to include these details in the initial complaint or the FAC. But they have had their proverbial "day in court" twice, and their Opposition gives no good reason why they should be allowed a third.

Second, as one court aptly held when dismissing a TCPA case with prejudice, "Plaintiff[s] already ha[ve] amended his [original] Complaint once in an attempt to remedy the precise infirmit[ies] at issue [in American-Amicable's original motion to dismiss, *see* ECF No. 9], but failed to do so"; thus, any "further amendment would be futile" and dismissal of the entire FAC with prejudice is appropriate. *See* ECF No. 14 at 28 (*quoting Jovanovic v. SRP Invs. LLC,* 2021 WL 4198163, at *4 (D. Ariz. Sept. 15, 2021) (citing *Lopez v. Smith,* 203 F.3d 1122, 1130 (9th Cir.

2000)). Tellingly, Plaintiffs' Opposition ignores this authority. This Court should not.

Third, the Court should dismiss the 47 C.F.R. § 1601(e) claim with prejudice on the grounds of futility because no set of facts can save the claim if no private right of action exists as a matter of law. As such, any factual amendment cannot possible cure this purely legal defect.

## VII.    **CONCLUSION**

For the reasons articulated in the Motion and in this Reply, the Court should dismiss Plaintiffs' entire First Amended Complaint in this matter (*see* ECF No. 11) with prejudice.

DATED this 5th day of July 2024.

TONKON TORP LLP

By: */s/ Jeffrey G. Bradford*
    Jeffrey G. Bradford, OSB No. 133080
    E-mail:    jeff.bradford@tonkon.com
    888 SW 5th Ave., Suite 1600
    Portland, Oregon 97204
    Telephone: (503) 802-5724

*Attorneys for Defendant American-Amicable Life Ins. Co. of Texas*

## <u>CERTIFICATE OF WORD COUNT</u>

This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains 6,070 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 5th, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of said filing to counsel of record as follows:

DATED this 5th day of July 2024.

TONKON TORP LLP

By: */s/ Jeffrey G. Bradford*
　　Jeffrey G. Bradford, OSB No. 133080
　　E-mail:    jeff.bradford@tonkon.com