IN THE UNITED STATES DISTRICT COURT

THE DISTRICT OF OREGON

DEBRA JOANN COATES GRIFFIN and
ROBERT HESSEE, individually and on
behalf of all others similarly situated,

        Plaintiffs,

   vs.

AMERICAN-AMICABLE LIFE INS. CO.
OF TEXAS,

        Defendant.

Case No. 6:24-cv-00243-MC

OPINION AND ORDER

MCSHANE, J.:

Defendant American-Amicable Life Insurance Company of Texas ("American-Amicable") moves to dismiss the First Amended Complaint (ECF No. 11, "FAC") filed by Plaintiffs Debra Joann Coates Griffin and Robert Hessee, individually and on behalf of all others similarly situated. Because Plaintiffs plausibly state a claim for relief, the Motion pursuant to Fed. R. Civ. P. 12(b)(6) is DENIED. Similarly, because Plaintiffs plausibly allege facts that confer Article III standing, Defendant's Motion pursuant to Fed. R. Civ. P. 12(b)(1) is DENIED.

## BACKGROUND

1 – OPINION AND ORDER

Plaintiffs allege that Defendant American-Amicable violated the Telephone Consumer Protection ("TCPA") by seeking to sell them insurance telephonically despite Plaintiffs' membership on the National Do Not call Registry.[1] On June 14, 2008, Plaintiff Hessee registered his phone number on the National Do Not Call Registry. FAC, at 7. On or around May 16, 2022, Hessee received a call on his personal cell phone. *Id.* He answered the call, said "hello" several times, and heard a click before being connected to a live agent. *Id.* The agent stated that their name was "Sam" and that they were a representative of an entity called "Funeral Expense." *Id.* Sam tried to sell Hessee life insurance, and Hessee expressed disinterest and hung up. *Id.*

On May 17, 2022, Hessee received another call from Sam at Funeral Expense. *Id.* at 7–8. This time, Sam informed Hessee that they were calling on behalf of American-Amicable, and again tried to sell Hessee life insurance. *Id.* at 8. Hessee informed Sam that he was not interested. *Id.* The phone call was transferred to another agent but was then disconnected. *Id.*

On May 19, 2022, Hessee received a third call from Sam. *Id.* Sam stated explicitly that they were calling on behalf of American-Amicable to solicit the sale of life insurance. *Id.* Next, Sam transferred the call to Ronnie Evans, who solicited the sale of life insurance and asked about Hessee's age and potential beneficiaries. *Id.* Evans then transferred the call to Robert Radcliffe, who asked a series of similar questions, after which the call disconnected. *Id.* Plaintiffs allege that Evans and Radcliffe acted as Defendant's agents, and that Radcliffe is listed as a licensed insurance producer for Defendant with the National Association of Insurance Commissioners. *Id.* at 8–9.

Plaintiff Griffin experienced something similar to Hessee. On August 24, 2021, Griffin registered her phone number on the National Do Not Call Registry. *Id.* at 9. Plaintiffs allege that

---

[1] At the motion to dismiss stage, this Court takes all of Plaintiffs' allegations as true. *See Burgert v. Lokelani Bernice Pauahi Bishop Tr.*, 200 F.3d 661, 663 (9th Cir. 2000).

2 – OPINION AND ORDER

between February and March of 2023, Griffin received at least three calls from Defendant. *Id.* On February 10, 2023, Griffin received a call in which the caller represented that they were from "Senior Final Expenses" on behalf of American-Amicable. *Id.* The caller tried to solicit life insurance and asked Griffin about her age, health, and zip code. *Id.* Griffin told the caller that she wished only to conduct business over email. *Id.* The caller then transferred Griffin to another agent by the name of Benjamin Angels, who also tried to sell Griffin life insurance on behalf of American-Amicable. *Id.* at 9–10. Griffin said she was not interested and hung up. *Id.*

On March 2, 2023, Plaintiff Griffin received another call from an individual representing Senior Final Expense, who stated they were calling on behalf of American-Amicable and tried to sell Griffin life insurance. *Id.* After Griffin stated her disinterest in speaking over the phone, the caller transferred Griffin to another agent named Sarah Angle. *Id.* Angle also tried to sell life insurance to Griffin on behalf of American-Amicable, and Griffin again stated that she did not want to speak over the phone. *Id.*

Plaintiff Griffin received a third call on March 7, 2023, in which the caller stated they represented Senior Final Expenses on behalf of American-Amicable. *Id.* at 10. The caller tried to sell Griffin life insurance, and Griffin stated that she did not want to communicate over the phone. *Id.* Again Griffin was transferred to another agent, Mark Simmons, who also tried to sell Griffin an insurance policy on behalf of American-Amicable. *Id.*

Plaintiffs bring this class action suit against American-Amicable under the Telephone Consumer Protection Act, which protects individuals from certain conduct in telemarketing schemes. *Id.* at 12–16. Defendant moves to dismiss under Fed. R. Civ. P. 12(b)(6), arguing that Plaintiffs fail to adequately allege a TCPA claim because they do not allege either direct or vicarious liability. Def's Mot. Dismiss at 2, 8–23 (ECF No. 14, "Motion"). Defendant also moves

3 – OPINION AND ORDER

to dismiss under Rule 12(b)(6) by contending that Plaintiffs lack a private right of action under the TCPA. *Id.* at 2–3, 23–28. Finally, Defendant moves to dismiss under Rule 12(b)(1) Plaintiffs' claim for injunctive relief by arguing that Plaintiffs do not have Article III standing since they do not allege an imminent risk of future injury. *Id.* at 3, 28.

## STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter that "state[s] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the factual allegations allow the court to infer the defendant's liability based on the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). When considering a motion to dismiss, the court must accept all allegations of material fact as true and construe those facts in the light most favorable to the non-movant. *Burgert v. Lokelani Bernice Pauahi Bishop Tr.*, 200 F.3d 661, 663 (9th Cir. 2000). But the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

The court must grant a defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(1) if the complaint fails to allege facts sufficient to establish subject matter jurisdiction. A federal court has no jurisdiction to resolve any claim for which a plaintiff lacks standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Standing must be established for each form of relief sought. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018). To demonstrate standing, a plaintiff must plead injury-in-fact, causation, and redressability. *Lujan*, 504 U.S. at 560–61. For a prospective remedy such as injunctive relief, the "threatened injury must be certainly impending," and "allegations of possible future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal quotation marks and alteration omitted). Previous injuries,

though insufficient by themselves to grant standing, are "evidence bearing on whether there is a real and immediate threat of repeated injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (internal quotation marks omitted). "When 'deciding standing at the pleading stage, and for purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.'" *Mecinas v. Hobbs*, 30 F.4th 890, 895–96 (9th Cir. 2022) (quoting *Desert Citizens Against Pollution v. Bisson*, 231 F.3d 1172, 1178 (9th Cir. 2000)).

## DISCUSSION

### I. Failure to State a Claim

Defendant argues that Plaintiffs' FAC should be dismissed with prejudice because Plaintiffs fail to state a plausible claim under the TCPA. Defendant argues both that Plaintiffs have not properly pled the elements of a TCPA claim, and that Plaintiffs lack a private right of action for one of the violations alleged. This Court holds that Plaintiffs successfully alleged a claim for either direct or vicarious liability under the TCPA, but that Plaintiffs may not pursue a private right of action for the alleged violations of 47 C.F.R. § 64.1601(e).

#### A. TCPA Liability

The TCPA and attendant regulations protect individuals in numerous ways from telemarketing schemes. Relevant here, the law protects against wireless calls without consent, provides for a National Do Not Call registry, and requires telemarketers to use appropriate caller ID. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2); 47 C.F.R. § 64.1601(e). "Making" a call, and making oneself liable under the TPCA, requires that "the person must either (1) directly make the call, or (2) have an agency relationship with the person who made the call." *Ewing v. Encor Solar, LLC,* 2019 WL 277386, at *6 (S.D. Cal. Jan. 22, 2019) (*citing Gomez v. Campbell-Ewald, Co.*,

768 F.3d 871, 877–79 (9th Cir. 2014)). These rules provide for two avenues of liability, direct or vicarious. Plaintiffs allege both.

### i. Direct Liability

Plaintiffs' claim plausibly alleges that Defendant is directly liable for violations of the TCPA. Under the direct liability standard, "the complaint must allege facts showing the defendant actually placed calls violating the TCPA." *Workman v. CarGuard Admin. Inc.*, 2024 WL 249160, at *5 (D. Ariz. Jan. 22, 2024). The Federal Communications Commission ("FCC") concluded that "a person or entity 'initiates' a telephone call when it takes the steps necessary to physically place a telephone call, and generally does not include persons or entities, such as third-party retailers, that might merely have some role, however minor, in the causal chain that results in the making of a telephone call." *In the Matter of the Joint Petition filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6583 ¶ 26 (2013).

Here, Plaintiffs allege facts to plausibly make out a claim for direct liability. Plaintiff Hessee received three calls from the caller named Sam with Funeral Expense. On the latter two calls, Sam indicated his affiliation with Defendant and attempted to sell Hessee life insurance. In Griffin's case, the caller in all three calls either identified themselves as Defendant or an agent of Defendant, and each call was subsequently transferred to an individual who stated they were speaking on behalf of Defendant.

In *Workman*, which the parties both argue cuts in their respective favor, the plaintiff received a call regarding a car warranty that was supposedly set to expire. 2024 WL 249160, at *1. The plaintiff followed pre-recorded prompts and was transferred to an individual named "Ina," and then another individual named "Castro." *Id.* None of the individuals identified themself as calling from the defendant, but during the call Castro sent an email to the plaintiff with a vehicles

services contract making clear that the policy Castro tried to sell to the plaintiff would be between the plaintiff and the defendant. *Id.* These facts were sufficient to plausibly allege that the defendant initiated the call and was directly liable. *Id.* at *3. Defendant attempts to distinguish *Workman*, arguing the individuals on the call there didn't identify themselves with any other company. Here, by contrast, the individuals calling introduced themselves as a different entity and stated that they were calling on behalf of Defendant. It is a difference without a distinction.

Defendant's line of argument distinguishing *Workman* relies on its assertion that an entity that has another entity call on its behalf cannot be directly liable under the TCPA. While a telemarketer calling "on behalf of" a defendant does not always create direct liability, it sometimes can. As clarified by the FCC in a declaratory rule, "one can imagine a circumstance in which a seller is so involved in the placing of a specific telephone call as to be directly liable for initiating it—by giving the third party specific and comprehensive instructions as to timing and the manner of the call, for example." *In the Matter of the Joint Petition filed by Dish Network, LLC*, 28 FCC Rcd., at 6583 ¶ 27. At this stage, the facts are sufficient to create a plausible inference that Defendant made the calls at issue. Plaintiffs received repeated calls by an outfit purporting to call on behalf of the Defendant to sell Defendant's services. And in the case of Hessee, the agent who called was registered as Defendant's agent on his license with the National Association of Insurance Commissioners. Given these facts, it is plausible that American-Amicable placed the calls to Plaintiffs and thus violated the TCPA.

### ii. Indirect Liability

Plaintiffs also allege sufficient facts to plausibly establish indirect or vicarious liability. In the Ninth Circuit, courts look to the Restatement (Third) of Agency for the criteria of liability. *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1072–73 (9th Cir. 2019) (citing

*Mavrix Photographs, LLC v. Livejournal, Inc.*, 873 F.3d 1045, 1054 (9th Cir. 2017)). "Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Rest. 3d Agency § 1.01. Forms of agency include "actual authority, apparent authority, and ratification." *Abante Rooter and Plumbing, Inc. v. Alarm.com Inc.,* 2018 WL 3707283, at *3 (N.D. Cal. Aug. 3, 2018). "Although the precise details of the agency relationship need not be pleaded to survive a motion to dismiss, sufficient facts must be offered to support a reasonable inference that a[] [common law] agency relationship existed." *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1301 (D. Nev. 2014).

  Here, Plaintiffs make a sufficient showing that actual authority exists. Actual authority exists where the defendant "controlled the 'manner and means' of the call[s]" that were made by a third party, such as where a contracted entity calls on behalf of the defendant. *Canary v. Youngevity Int'l, Inc.*, 2019 WL 1275343, at *6 (N.D. Cal. Mar. 20, 2019). Hessee received three calls from the individual named Sam who called from Funeral Expense. On the latter two calls, Sam represented himself as calling on behalf of Defendant. On the third call, Sam transferred Hessee to two different agents, who again tried to sell him Defendant's life insurance. And as noted above, one of those agents lists Defendant on his license with the National Association of Insurance Commissioners. In Griffin's case, each individual who called explicitly stated they were calling on Defendant's behalf to sell Defendant's services.

  With these facts, the Court can plausibly infer that Defendant controlled the manner and means of the calls such that the callers had Defendant's actual authority. Plaintiffs at this stage in the litigation do not have visibility into Defendant's operations to be able to marshal detailed

evidence of the relationship between Defendant and those who physically placed the calls. The facts alleged in the FAC are sufficient to plausibly infer that the callers had actual authority as Defendant's agents, so Defendant's Motion under Rule 12(b)(6) is denied.

## B. Private Right of Action

Defendant also moves to dismiss under Rule 12(b)(6) by arguing that Plaintiffs do not have a private right of action to sue under the TCPA. Plaintiffs allege that Defendant violated 47 U.S.C. § 227(c) when it (1) "placed multiple telemarketing calls to Plaintiff . . . without their prior express consent," (2) called Plaintiffs multiple times "without regard to whether Plaintiffs . . . were on the National Do Not Call Registry," and (3) "lacked appropriate caller ID on any of the unsolicited telemarketing phone calls in violation of 47 C.F.R. § 64.1601(e)." FAC, at 15. The parties further dispute whether a private right of action exists for Defendant's alleged violation of the caller ID requirements in 47 C.F.R. §64.1601(e). The Court finds that, while no private right of action exists for violation of that regulation, Plaintiffs sufficiently allege a violation of § 227 of the TCPA to survive a motion to dismiss.

"The TCPA was enacted to 'protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home[.]'" *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) (quoting S.Rep. No. 102-178, at 1 (1991)); *see also Mattson v. Quicken Loans, Inc.*, 2018 WL 2326605, at *2 (D. Or. May 22, 2018) ("The purpose of the TCPA is to prevent repeated, unwanted telemarketing calls by honoring do-not-call requests."). Congress directed the FCC to regulate telephone solicitations and provided for a private right of action for violations of those regulations. 47 U.S.C. § 227(c)(1)–(2), (5). To sustain a private right of action under § 227, plaintiffs must allege the violation of a regulation that was "prescribed under this subsection," that is, § 227(c). 47 U.S.C. § 227(c)(5).

9 – OPINION AND ORDER

One of those regulations is 47 C.F.R. § 64.1200(c)(2), which prohibits telephone solicitation to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry[.]" *See also Barton v. JMS Assoc. Mktg., LLC*, 2023 WL 2009925 (9th Cir. Feb. 15, 2023) (finding a private right of action under § 227(c)(5) for violation of 47 C.F.R. § 64.1200(c)(2)).

Although Plaintiffs do not cite 47 C.F.R. § 64.1200(c)(2), they sufficiently allege facts to establish a violation of that rule. Plaintiffs allege that both Griffin and Hessee were listed on the National Do Not Call registry, and that Defendant nevertheless called them multiple times in a 12-month period. These are plausible facts that establish Defendant violated 47 U.S.C. § 227(c)(5) and allow Plaintiff to maintain a private right of action under that section.

Plaintiffs also allege a violation of 47 C.F.R. § 64.1601(e), which requires telemarketers to provide certain caller ID information. Defendant argues that an alleged violation of § 64.1601(e) does not afford Plaintiffs a claim under the TCPA, because that rule was not promulgated pursuant to § 227(c), as required for a private right of action under § 227(c)(5). Try as they might, Plaintiffs are able to cite only one case in support of their interpretation of § 64.1601, *Worsham v. LifeStation, Inc.*, 2021 Md. App. LEXIS 1014, at *46–48 (Md. App. Nov. 17, 2021). There, the court "conclude[d] that § 64.1601(e)(1) was promulgated pursuant to § 227(c) and, therefore, that a private right of action exists to enforce its provisions." *Id.* In support of their Motion to Dismiss this part of Plaintiffs' claim, Defendants cite several cases in which federal courts found no private right of action for violations of § 64.1601(e). Motion, at 27 (citing, among others, *Worsham v. Travel Options, Inc.*, 2016 WL 4592373, at *4 (D. Md. Sept. 2, 2016), *aff'd*, 678 F. App'x 165 (4th Cir. 2017); *Dobronski v. Tobias & Assocs.*, 2023 WL 7005844, at *8 (E.D. Mich. Sept. 25, 2023),

10 – OPINION AND ORDER

*report and recommendation adopted in part sub nom. Dobronski v. Tobias & Assocs., Inc.*, 2024 WL 1174553 (E.D. Mich. Mar. 18, 2024)).

As there appears to be no controlling precedent on this issue, this Court finds persuasive the reasoning of every federal court to consider the issue, including *Meyer v. Capital Alliance Grp.*, 2017 WL 5138316 (S.D. Cal. Nov. 6, 2017). In *Worsham*, cited by Defendant, the court combed through the FCC rules and comments, and found that "the FCC's rule in § 64.1601(e) appears to *support* consumers' enforcement efforts under the TCPA's subsection c, rather than to *create* a separate mechanism upon which a consumer can make an actionable claim." *Worsham*, 2016 WL4592373, at *4–5 (emphasis in original). And in *Meyer*, the court relied on the United States Supreme Court's principles of statutory construction and declined to create a private right of action where none was expressly created. 2017 WL 5138316, at *16–17. Seeing no reason to reject the thoughtful analysis of those courts, this Court holds that Plaintiffs may not pursue a private right of action under 47 U.S.C. § 227(c)(5) for alleged violations of 47 C.F.R. § 1601(e). Accordingly, to the extent Plaintiffs plead such a claim, that claim is dismissed with prejudice.

Defendant also argues Plaintiffs violated the "short and plain statement" requirement of Fed. R. Civ. P. 8 by alleging violations of both § 64.1601 and § 64.1200 as part of the same claim. That argument is rendered moot by the dismissal of Plaintiffs' claim under § 64.1601.

**II.    Standing**

Defendant also moves to dismiss under Fed. R. Civ. P. 12(b)(1) Plaintiffs' claim for injunctive relief by arguing that Plaintiffs do not have standing. Defendant argues that Plaintiffs do not allege facts to suggest an imminent risk of future injury. Plaintiffs argue that, "[g]iven Defendant's penchant for calling Plaintiffs despite repeatedly asking them not to, Plaintiffs are at risk for future telemarketing at any time." Pls.' Opp. to Def.'s Mot. Dismiss, at 21 (ECF No. 15).

Construing the FAC in the light most favorable to Plaintiffs, Plaintiffs sufficiently allege an imminent risk of future harm that entitles them to injunctive relief. Plaintiffs allege that "Defendant engages in unsolicited marketing, harming thousands of consumers in the process," and that "[t]he cumulative effect of unsolicited phone calls and voicemails like Defendant's poses a real risk of ultimately rendering [Plaintiffs' phones] unusable[.]" FAC at 2, 12. In *Chennette v. Porch.com, Inc.*, 50 F.4th 1217 (9th Cir. 2022), the Ninth Circuit held that plaintiffs had Article III standing to pursue claims for damages and injunctive relief under the TCPA, because "[a] plaintiff alleging a violation under the TCPA 'need not allege any additional harm beyond the one Congress has identified.'" 50 F.4th at 1222 (quoting *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017)). Other courts to consider this issue with similar facts have held that plaintiffs had standing because "it is plausible that Plaintiff[s] may receive additional calls in the future," particularly where, as here, a defendant has made no assurances that it will abstain from the allegedly wrongful conduct. *Sasin v. Enter. Fin. Grp., Inc.*, 2018 WL 10574367, at *7 (C.D. Cal. Nov. 21, 2017); *see, e.g.*, *Rogers v. Assurance IQ, LLC*, 2023 WL 2646468, at *8 (W.D. Wash. Mar. 27, 2023) ("Defendants have not claimed to have ceased the challenged conduct, and Defendants have made no representation that they have taken action to prevent continuance of the challenged conduct, such as deleting Plaintiffs' phone numbers from their records or ceasing their calls to Plaintiffs since the complained-of incidents."); *Miller v. Time Warner Cable, Inc.*, 2016 WL 7471302, at *4 (C.D. Cal. Dec. 27, 2016) (plaintiff lacked standing for TCPA injunctive relief where defendant showed it had received and respected plaintiff's do-not-call request).

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 14) is DENIED in part and GRANTED in part.

12 – OPINION AND ORDER

IT IS SO ORDERED.

Dated this 27th day of September, 2024.

                                                      _____/s/ Michael McShane_____
                                                         Michael McShane
                                              United States District Judge